**2020 WI App 14**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2018AP2419-CR

                                                    † Petition for Review filed

Complete Title of Case:


            STATE OF WISCONSIN,

                    PLAINTIFF-RESPONDENT,†

                V.

            ANGEL MERCADO,

                    DEFENDANT-APPELLANT.


| | |
|---|---|
| Opinion Filed: | February 4, 2020 |
| Submitted on Briefs: | September 9, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, P.J., Kessler and Fitzpatrick, JJ. |
| Concurred: | |
| Dissented: | Fitzpatrick, J. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Esther Cohen Lee* of *Hall, Burce & Olson SC*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Scott E. Rosenow*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 4, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2419-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF3679

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANGEL MERCADO,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. CONEN, Judge. *Reversed and cause remanded with directions*.

Before Brash, P.J., Kessler and Fitzpatrick, JJ.

¶1 BRASH, P.J. Angel Mercado appeals his judgment of conviction for two counts of first-degree sexual assault of a child for having sexual contact with a child under the age of thirteen, and one count of first-degree sexual assault of a child

for having sexual intercourse with a child under the age of twelve. He also appeals the trial court's denial of his postconviction motion for a new trial on the grounds that the trial court erred in admitting the videos of forensic interviews of the three children. Mercado argues that the court did not follow all of the statutory procedures for the admission of those videos, as set forth in WIS. STAT. § 908.08 (2017-18).[1] He further asserts that admission of the videos under alternative grounds—either pursuant to the residual hearsay exception, or, in the case of the youngest child, as a prior inconsistent statement—would have been in error as well.

¶2      The trial court rejected Mercado's claims, stating that it "perceive[d] no error" in statutory procedure in its admission of the videos. The court also agreed with the State that in any event, all three videos were admissible under the residual hearsay exception, and that the video of the youngest child was admissible as a prior inconsistent statement.

¶3      We disagree. The record indicates that the statutory requirements for admission of all three of the videos were not fully met and further, that the requirements for admission under the residual hearsay exception or as a prior inconsistent statement likewise were not satisfied. We therefore reverse Mercado's convictions on all three charges and remand this matter for a new trial.

**BACKGROUND**

¶4      The charges against Mercado involve three children: O.E.G., born January 23, 2009; L.A.G., born August 2, 2011; and N.L.G., born July 25, 2012.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version, unless otherwise noted.

The assaults on the children were alleged to have occurred between June 2016 and August 2016, when the three children and their mother, C.J.C., were living with Mercado at his residence on South 24th Street in Milwaukee.[2] C.J.C. stated that she had known Mercado since 2011, and that they had moved in with Mercado so that she could assist him with his daily care: his medication, his appointments, and some household duties.

¶5 C.J.C. found out about the sexual assaults in August 2016. She was in the car with N.L.G. after running errands and had started singing along to a song on the radio which included the lyrics "I want to lick you up and down." N.L.G. blurted out "[t]hat's what he does." C.J.C. then asked her who did that, and N.L.G. answered "Viejo"—the children's nickname for Mercado.

¶6 When they arrived at the residence, C.J.C. asked L.A.G. if anyone had been touching her, to which she responded "yes." C.J.C. asked her if it was "Viejo" who had been touching her, and she responded affirmatively. When O.E.G. returned home that evening, C.J.C. also asked her if "Viejo" had been touching her, and she responded that he had. She then took the girls to the hospital that night to be examined. A few days later, police officers conducted forensic interviews with each of the children, which were videotaped.

¶7 Mercado was subsequently charged with two counts of first-degree sexual assault of a child for having sexual intercourse with a child under the age of twelve, and one count of first-degree sexual assault of a child for having sexual contact with a child under the age of twelve. The matter proceeded to trial in November 2016; however, it resulted in a mistrial due to difficulties with accurately

___

[2] C.J.C. had another child, J.G.—a thirteen-year-old—who also lived at the residence on South 24th Street. She is not involved in this case.

translating the videos of the children's forensic interviews for Mercado. As a result, the trial court ordered that the videos be transcribed so that the transcriptions could be read to Mercado as the videos were being played at trial. Those transcripts, which were prepared by the district attorney's office, were also to be provided to the jury at the time the videos were played to assist the jurors in understanding any portions of the videos that were difficult to hear.

¶8    The matter was then re-tried in January 2017. The video of L.A.G.'s forensic interview was introduced and played. At the time of the interview, L.A.G. had just turned five years old, but told the officer she was four—even after the officer asked about her birthday, which had occurred just two weeks prior to the interview. In the video, the officer conducting the interview tried to establish that L.A.G. understood the difference between the truth and a lie by discussing the color of the officer's pants: her pants were black, and she asked L.A.G. that if someone said they were red, whether that was the truth or a lie; L.A.G. answered "I think that's the truth." L.A.G. also stated that she did not know whether it was important to tell the truth, and would not promise to tell the truth during the interview. She subsequently told the officer that Mercado had carried her to the basement, pulled her skirt down, and put his tongue on her "pee-pee" and had "licked [her] butt too." She also stated that he had done the same thing to her sisters.

¶9    After the video was played, L.A.G. testified. During the trial court's colloquy with her to establish her ability to understand the difference between the truth and a lie, L.A.G. first said that she did not know what it meant to tell the truth, but said that a lie was not telling the truth. The trial court then asked her questions regarding the color of his robe, and whether stating that it was pink was a lie, and she answered affirmatively. L.A.G. then testified that Mercado had done "nasty stuff" to her on the table in the basement, including licking her on the chest, below

the waist, and on her butt. When asked if this happened over her clothes, under her clothes, or "something else," L.A.G. replied that it was "something else" but could not explain.

¶10    Next, the video of O.E.G.'s forensic interview was played. O.E.G.—who was seven years old at the time of the interview—was asked the same question by the officer about the color of her pants, and O.E.G. answered that saying they were red was a lie. O.E.G. also responded that "a kid who gets caught telling a lie" would get a "time-out." O.E.G. then told the officer that the man they live with was touching her in "the private part," and touching her two little sisters too.

¶11    After the video was played, O.E.G. testified. She refused to provide any information regarding her assaults while on the stand, but she did state that she had told the truth to the officer who conducted the forensic interview, and that she was mad at Mercado because of the things that she had talked about with the officer.

¶12    With regard to N.L.G., Mercado had previously requested at a pretrial motion hearing that the video of her forensic interview not be admitted based on her lack of understanding between telling the truth and a lie as observed in her video. The officer conducting the interview tried to establish her comprehension by asking N.L.G.—who had recently turned four years old at the time of the interview—if a pillow was called a wall; she said that was "not wrong." Additionally, she did not answer the officer's questions regarding whether there are consequences for not telling the truth. In fact, the officer's report regarding the interview stated that N.L.G. "was unable to articulate the difference between truth and lie" and that she "did not understand that there were consequences for telling lies and could not say whether it was important to tell the truth."

¶13    The trial court ruled that those concerns were an issue of credibility for the jury to determine, and that N.L.G. should be allowed to testify if there was even the "slightest" indication that she could testify as to what happened to her. However, the court was concerned that N.L.G. would "sit there and say nothing" when called to testify, which would not provide a meaningful opportunity for cross-examination. Thus, the court determined that the best course of action would be to have N.L.G. testify before her video was played, and then provide the defense with the opportunity to continue its cross-examination after the video.

¶14    When N.L.G. took the stand, the trial court asked her about the color of his robe—whether saying that it is green would be a lie when it is actually black. N.L.G. answered that saying it was green would not be telling the truth, but rather would be a lie. She indicated that she understood that she had to tell the truth and promised to do so while testifying.

¶15    The prosecutor then asked N.L.G. whether she remembered the officer who did her forensic interview. Her response was mixed—she said she remembered him, then said she had not seen him before, but then stated that she remembered talking to him "a while back[.]" However, when defense counsel asked the same question, N.L.G. stated that she did not remember the officer and that she had not talked to him about any "serious things" that had happened to her with Mercado.

¶16    At a sidebar following these exchanges, defense counsel argued that there was no meaningful opportunity to cross-examine N.L.G. because she did not remember the forensic interview. The trial court disagreed, noting that a meaningful opportunity for cross-examination "means ask questions and whatever answers there are, those are the answers that everyone's stuck with[.]" The court further

6

observed that the record at that point was advantageous to the defense since it reflected that N.L.G. had stated that she did not remember the forensic interview.

¶17     The court then indicated that it would allow defense counsel to further cross-examine N.L.G. after her video was played so that counsel could "ask specific questions about the video." However, defense counsel declined, stating that she was "not asking for additional opportunity" for cross-examination because she saw "no point … in continuing to try to ask a witness something that she has no memory of occurring."

¶18     N.L.G.'s forensic video was then played for the jury. It was difficult to discern what N.L.G. was saying during much of the video; however, she told the officer that Mercado had licked her on her butt, her leg, her hand, and her back, and had touched her arm. These statements were made in the midst of N.L.G. also making other statements to the officer, such as that her mother had "rolled [her] down the stairs … like a ball"; that someone had given her a prize with a cockroach in it; that L.A.G. had made popcorn; asking whether she had to take her shoes off; asking the officer who had cut his hair; and asking whether the officer had a microwave. The court had ordered that N.L.G. remain in the court room while the video was played "in case there is a need for additional cross-examination"; however, she was not recalled.

¶19     C.J.C. also testified at the trial. She explained her relationship with Mercado: that she had known him for five or six years and they were "good friends." She stated that she had been having "a lot of problems" and admitted that the children had previously been in foster care for two years. She explained that Mercado "was willing to take [her] in with [her] girls and help [her] out," and that she was in return helping him with "in-home care," including his medical and

7

financial affairs. C.J.C. also stated that when she first asked the children about what had happened to them, she had spoken with all three of them together.

¶20 The nurse who examined the children at the hospital testified as well. She stated that she asked each girl if they knew why they were there, and that the girls each told her that "Viejo" had been touching them. She further testified that she had observed no signs of injuries to the girls. Additionally, the officers who conducted the forensic interviews of the girls testified, explaining their procedures for conducting the interviews.

¶21 Mercado then testified in his defense. He repeatedly denied assaulting any of the children, saying they were like his daughters. He stated that C.J.C. had a "vice" which kept her from maintaining a stable place to live, and that he had taken her and the children "off of the street" four different times. Mercado also stated that he knew C.J.C. had previously "lost [the children] to the State" because of being homeless, and that because he "love[s] her like [his] own daughter" he could not "leave her on the streets."

¶22 Mercado testified that he generally did not discipline the children, but that about two months prior to the complaint in this case he had to carry the children out of his room when they were jumping on his bed because C.J.C. was "all drugged up" and unable to take care of them. He also stated that around the time of the complaint he had refused to give C.J.C. money because he knew that she would use it to buy drugs. He noted that she had his bank card to "help" him with his banking, and he had since discovered that she had been withdrawing money from his account, and that he thought "this is all just because of money."

¶23    The jury convicted Mercado on all three counts.[3]   The sentences imposed by the trial court totaled forty-five years of initial confinement and thirteen years of extended supervision, to be served concurrently.[4]

¶24    Mercado filed a postconviction motion, asserting that it was error for the trial court to have admitted the videos of the forensic interviews.  Mercado argued that the court did not comply with all of the requirements for admission as set forth in WIS. STAT. § 908.08.  Specifically, Mercado contended that the court was required to view the entire length of each video pursuant to § 908.08(2)(b), noting that at the pretrial hearing, the court made a statement that it was "going to review the first few minutes of each of the videos" so that the court could discuss it in greater detail the next day.

¶25    Mercado also asserted that the trial court did not make the required findings set forth in WIS. STAT. § 908.08(3).  These required findings include a determination "[t]hat the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth."  Sec. 908.08(3)(c). Mercado argued that this finding could not be made with regard to N.L.G. based on her lack of understanding in the video between telling the truth and a lie.

---

[3] Pursuant to an entry in CCAP, the State made a motion during the trial to amend one of the charges for sexual intercourse with a child to sexual contact; thus, the charges for which Mercado was convicted are two counts of sexual contact with a child under the age of thirteen, and one count of sexual intercourse with a child under the age of twelve.  We may take judicial notice of CCAP records; CCAP is an acronym for Wisconsin's Consolidated Court Automation Programs, and the online website consists of information entered by court staff. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

[4] The count of sexual intercourse with a child under the age of twelve carries a mandatory minimum penalty of twenty-five years of initial confinement.

¶26 Mercado further argued that in allowing N.L.G. to testify before her video was shown to the jury, the trial court did not follow the statutory procedure for calling the child to testify immediately after the video is viewed for cross-examination. *See* WIS. STAT. § 908.08(5)(a). Mercado also contended that it was reversible error for the transcripts of the videos provided to the jury to be uncertified: they were not prepared by a certified court reporter but rather by the district attorney's office, and they were not transcribed by the official court reporter as they were being played during the trial.

¶27 The trial court rejected all of Mercado's arguments. The court maintained that all three children—including N.L.G.—had "demonstrated the requisite understanding of the importance of telling the truth and that false statements were punishable." The court further noted that its statements at the pretrial hearing regarding watching "the first few minutes" of the videos was followed up the next day at trial by its statements that it had "reviewed all relevant portions of the videos necessary to make its ruling on their admissibility[.]"[5]

¶28 With regard to N.L.G.'s testimony, the trial court indicated that it found it appropriate to have N.L.G. testify before the video was shown "in order to prevent prejudice to [Mercado] should her testimony lead to the exclusion of the video." The court further stated that it had offered Mercado the opportunity to cross-examine N.L.G. after her video was played, which he waived.

---

[5] At the pretrial motion hearing on November 8, 2016, the trial court stated that with regard to the videos of the forensic interviews, it "[hadn't] seen anything." The next day, November 9, 2016, prior to commencing the first trial, the court noted that it had reviewed "relevant portions" of the videos of N.L.G. and L.A.G. The court at that time did not explain what that included, and further, it did not indicate that it had watched any of O.E.G.'s video. However, in its written decision denying Mercado's postconviction motion, the court noted that it had "viewed all three videos in their entirety when they were played for the jury at the trial[.]"

¶29    Finally, the trial court observed that the court reporter was not required to transcribe the videos, and that any argument relating to the non-certification of the transcripts utilized during the trial had been forfeited by Mercado as he did not raise the issue at trial.  Moreover, Mercado had made no showing that the transcripts were inaccurate.

¶30    This appeal follows.

## DISCUSSION

¶31    On appeal, Mercado reiterates the arguments he raised in his postconviction motion—that the videos of the forensic interviews of the children were admitted erroneously.  "Trial courts have broad discretion to admit or exclude evidence and to control the order and presentation of evidence at trial; we will upset their decisions only where they have erroneously exercised that discretion." *State v. James*, 2005 WI App 188, ¶8, 285 Wis. 2d 783, 703 N.W.2d 727.  "The trial court acts erroneously when its discretionary ruling contravenes nondiscretionary statutes or is based on an incorrect interpretation of the law." *Id.*  "Whether the trial court properly interpreted the law presents a question of law that we review independently." *Id.*

1. *The trial court did not comply with the requirements of* WIS. STAT. *§ 908.08(2)-(3).*

¶32    WISCONSIN STAT. § 908.08 is a hearsay exception created by the legislature to specifically address concerns relating to the admission of audiovisual recordings of statements by children.  We first discuss Mercado's argument that the trial court failed to comply with the statutory requirements of § 908.08 in admitting

the videotaped statements of all three children in this case.[6] This requires us to interpret the provisions of that statute.

¶33 We interpret WIS. STAT. § 908.08 according to the well established tenets of statutory construction. "The aim of statutory construction is to determine the legislature's intent." *Fond Du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 332, 440 N.W.2d 818 (Ct. App. 1989). "This intent is primarily deduced from the language which the legislature has chosen to use." *Id.* "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶34 Mercado first argues that pursuant to WIS. STAT. § 908.08(2)(b), the trial court was required to view the videos in their entirety prior to ruling on their admissibility. That section states:

> Before the trial or hearing in which the statement is offered and upon notice to all parties, the court or hearing examiner shall conduct a hearing on the statement's admissibility. At or before the hearing, the court shall view the statement. At the hearing, the court or hearing examiner shall rule on objections to the statement's admissibility in whole or in part. If the trial is to be tried by a jury, the court

---

[6] The State argues that Mercado has forfeited this argument because he did not timely raise objections at trial to the admission of all three videos; he only objected to admitting N.L.G.'s video. "Forfeiture is a rule of judicial administration, and whether we apply the rule is a matter addressed to our discretion." *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702. In this case, these videos were essentially the only evidence against Mercado. In fact, the State concedes that "it likely would not have been able to prove" its case against Mercado with regard to N.L.G. without her video. Therefore, based on those circumstances, we choose not to apply the rule of forfeiture here. Additionally, we note that the State did not argue forfeiture in response to Mercado's postconviction motion, so the issue was not addressed by the trial court in its denial of that motion.

shall enter an order for editing as provided in [WIS. STAT.] § 885.44(12).

Sec. 908.08(2)(b).

¶35 In its postconviction decision, the trial court stated that it had "reviewed all *relevant portions of the videos* necessary to make its ruling on their admissibility[.]" (Emphasis added.) The State argues that this is sufficient because the purpose of this requirement is "advanced by requiring a [trial] court to review only … those parts that are the subject of objections to the video's admissibility."

¶36 In support of this argument, the State compares WIS. STAT. § 908.08(2)(b) to WIS. STAT. § 885.44(11), the requirements for the admission of videotaped depositions. The latter statute states:

> (11) Ruling on objections. In ruling on objections the court may view the entire videotape or pertinent parts thereof, listen to an audiotape of the videotape sound track, or direct the objecting party to file a partial transcript. The court shall make written rulings on objections and an order for editing. Copies of the court's rulings and order for editing shall be sent to the parties and the objecting witness.

*Id.*

¶37 We first point out that WIS. STAT. § 908.08(2)(b) does not include language that allows for viewing only the "pertinent parts" of a video; rather, it simply states that "the court shall view the statement." *Id.* "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." *Fond Du Lac Cty.*, 149 Wis. 2d at 334.

¶38 Furthermore, it is clear from the plain language of WIS. STAT. § 885.44(11) that its primary purpose is to direct the trial court when ruling on objections to deposition testimony. *See id.* While WIS. STAT. § 908.08(2)(b) also

13

contemplates the trial court ruling on objections to admissibility, that is not the primary purpose of that section; rather, that section directs the trial court on the procedure for admitting the video.

¶39 In fact, WIS. STAT. § 908.08(2)(b) specifically instructs the trial court to review the child's statement in the video at or prior to the hearing on admissibility and then rule on objections to admissibility, either "in whole or in part." *Id.* This procedure, as described in the statute, suggests that a complete review of the video is required under § 908.08(2)(b).

¶40 Moreover, the videotaped statements permitted under WIS. STAT. § 908.08 may be unsworn, a distinct difference from the videotaped depositions contemplated in WIS. STAT. § 885.44(11). Pursuant to § 908.08(3)(c), a child witness need not be sworn prior to making the videotaped statement if "the child's development level is inappropriate for the administration of an oath[.]" *See id.* In that case, the video is still admissible upon a finding by the trial court that the child has demonstrated an understanding "that false statements are punishable and of the importance of telling the truth." *See id.* In contrast, in a videotaped deposition the witness has been sworn, so that witness has declared that he or she will testify truthfully. *See* § 885.44(2)(f); *see also* WIS. STAT. § 906.03. This provides a heightened level of trustworthiness for the deposition statement which is not necessarily present with a child's videotaped statement. *See* § 906.03.

¶41 As such, we are not persuaded that WIS. STAT. § 908.08(2)(b) allows for the trial court to view only the "relevant portions" of a video prior to ruling on its admissibility. Therefore, we agree with Mercado that because the trial court stated at the pretrial hearing regarding the admission of the videos that it had not viewed the video of O.E.G. and had viewed only the "relevant portions" of the

videos of L.A.G. and N.L.G.—with no explanation of what that entailed[7]—the court did not satisfy the statutory requirement to "view the statement[s]" prior to admitting them into evidence. *See **id.***

¶42    We further conclude that the trial court did not make all of the requisite findings as required under WIS. STAT. § 908.08(3).  Specifically, the trial court must make all of the following findings prior to admitting a video:

> (a) That the trial or hearing in which the recording is offered will commence:
>
> 1. Before the child's 12th birthday[.]
>
> ….
>
> (b) That the recording is accurate and free from excision, alteration and visual or audio distortion.
>
> (c) That the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth.
>
> (d) That the time, content and circumstances of the statement provide indicia of its trustworthiness.
>
> (e) That admission of the statement will not unfairly surprise any party or deprive any party of a fair opportunity to meet allegations made in the statement.

***Id.***

---

[7]  Judge Fitzpatrick in his dissent asserts that we should assume the trial court's description of "relevant portions" refers to the entire statements of the children as recorded, as opposed to also viewing the portions of the videos that show only the empty interview room. *See* Dissent, ¶84.  We disagree.  The trial court did not explain on the record what it meant by "relevant portions." Furthermore, as previously noted, the court states in its written decision on Mercado's postconviction motion that it had "viewed all three videos in their entirety *when they were played for the jury at trial*[.]"  (Emphasis added).  This implies that the court had *not* viewed the videos in their entirety prior to ruling that they were admissible.

¶43     The findings required in (a)1. and (e) are not in dispute.  However, we believe that the findings relating to (b) and (d) are difficult to make without viewing the entire video.

¶44     Furthermore, from our review of the videos, we are unable to conclude that the finding required in (c) could be made with regard to L.A.G. and N.L.G.  In their respective forensic interviews, neither child demonstrated a firm understanding of the difference between the truth and a lie, or that there are negative consequences for telling a lie; indeed, this issue was specifically noted in the report of the officer who interviewed N.L.G.  Moreover, although the trial court engaged in a colloquy with each child upon being called to testify to establish this requirement, under WIS. STAT. § 908.08(3) this finding was to be made *before* ruling that the videos were deemed admissible, based on the statements in the videos—not at trial while taking the children's testimony.

¶45     As a result, we conclude that the trial court did not comply with the requirements of WIS. STAT. § 908.08(2) or (3) in admitting the videos of the three children.  Thus, the court erroneously exercised its discretion in admitting the videos under that statute.  *See James*, 285 Wis. 2d 783, ¶8.

### 2. The videos are not admissible under the residual hearsay exception.

¶46     The State argues—and the trial court agreed—that the videos were nevertheless admissible under the residual hearsay exception.  Under WIS. STAT. § 908.08(7), the trial court may admit a video under a hearsay exception "without requiring compliance with § 908.08(2) and (3)." *State v. Snider*, 2003 WI App 172, ¶16, 266 Wis. 2d 830, 668 N.W.2d 784.  The residual hearsay exception, set forth at WIS. STAT. § 908.03(24), permits the admission of a statement "not specifically

16

covered" by any other hearsay exception "but having comparable circumstantial guarantees of trustworthiness."

¶47    The courts have determined that "[t]he residual hearsay exception is designed as a catch-all exception that allows hearsay statements that may not comport with established exceptions, but which still demonstrate sufficient indicia of reliability to be admitted." *State v. Huntington*, 216 Wis. 2d 671, 687, 575 N.W.2d 268 (1998).  In fact, our supreme court has recognized that "there is a compelling need for admission of hearsay arising from young sexual assault victims' inability or refusal to verbally express themselves in court," and that the residual hearsay exception "is an appropriate method to admit these statements if they are otherwise proven sufficiently trustworthy." *State v. Sorenson*, 143 Wis. 2d 226, 243, 421 N.W.2d 77 (1988).

¶48    The court in *Huntington* established five factors which the trial court must consider when applying the residual exception to a child's out-of-court statements:  (1) the attributes of the child, including age, ability to communicate, comprehension of questions, and understanding of the difference between the truth and falsehood; (2) the relationship between the child and the person to whom the statement was made; (3) the circumstances under which the statement was made, including the time frame between when the assault occurred and when the statement was made, as well as other contextual clues that could assist in determining the statement's trustworthiness; (4) the content of the statement, including any indication of false information; and (5) any corroborating evidence, such as physical evidence of an assault, statements made by the victim to others, and opportunity or motive of the defendant.  *Id.*, 216 Wis. 2d at 687-88.

17

¶49    The videos do not meet all of these requirements. As previously discussed, L.A.G. and N.L.G. did not demonstrate that they understood "the difference between the truth and falsehood," as required by the first factor. *See id.* at 687 (citation omitted). Furthermore, by not reviewing the videos in their entirety prior to admitting them, the trial court did not fully comply with the fourth *Huntington* factor relating to the content of the statement and whether there are indications that the information is false. *See id.* As a result, the videos were not admissible under the residual hearsay exception.

¶50    If it is found that a hearsay statement was erroneously admitted, that decision is subject to a harmless error analysis. *State v. Britt*, 203 Wis. 2d 25, 41, 553 N.W.2d 528 (Ct. App. 1996). "Generally, an error is harmless if there is no reasonable possibility that it contributed to the conviction." *State v. Tulley*, 2001 WI App 236, ¶7, 248 Wis. 2d 505, 635 N.W.2d 807. A reasonable possibility is "one sufficient to undermine confidence in the outcome of the proceeding." *Id.* "The burden of proof is on the beneficiary of the error to establish that the error was not prejudicial." *Id.* In other words, any error in admitting the videos will be deemed to be harmless only if the State, which benefitted from the error, proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *See State v. Hunt*, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434 (citations omitted). "In making this determination, we weigh the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict." *Britt*, 203 Wis. 2d at 41.

¶51    Based on the record, we conclude that the videos were the key pieces of evidence—indeed, they were essentially the *only* evidence—in this case. There were no witnesses to the assaults. There was no DNA evidence located on any of the children. Mercado had no prior convictions. Thus, the statements of the children

in those videos were crucial to the case against him. Therefore, their erroneous admission cannot be deemed to be harmless. *See **id.***

### *3. N.L.G.'s video is not admissible as a prior inconsistent statement.*

¶52 Finally, the State argues that N.L.G.'s video was admissible as a prior inconsistent statement. This argument stems from the statement made by N.L.G. at trial, while she was being questioned by the trial court as well as the prosecutor and defense counsel to determine her level of comprehension: she stated that she did not remember having the forensic interview with the officer. This questioning of N.L.G. was done prior to her video being played for the jury, due to the court's concerns that N.L.G. would not speak while on the stand, which in turn would not provide a meaningful opportunity for cross-examination.

¶53 Thus, the State contends that N.L.G.'s video is admissible as extrinsic evidence of a prior inconsistent statement pursuant to WIS. STAT. § 906.13. Under that statute, such a statement is admissible only if at least one of the following factors is applicable:

> 1. The witness was so examined while testifying as to give the witness an opportunity to explain or to deny the statement.

> 2. The witness has not been excused from giving further testimony in the action.

> 3. The interests of justice otherwise require.

Sec. § 906.13(2)(a).

¶54 The State asserts that N.L.G.'s video is a prior inconsistent statement admissible as a hearsay exception pursuant to WIS. STAT. § 908.08(7), and thus does not require compliance with § 908.08(2) and (3). *See **Snider***, 266 Wis. 2d 830, ¶16.

However, pursuant to its definition set forth at WIS. STAT. § 908.01(4)(a)1., a prior inconsistent statement is *not* hearsay. Therefore, it cannot be categorized as a hearsay exception that would allow for admission of the video pursuant to § 908.08(7).

¶55    Furthermore, we have already concluded that the trial court failed to make the requisite findings as set forth in WIS. STAT. § 908.08(3) prior to admitting any of the videos, including a finding that N.L.G. understood the difference between the truth and a lie, pursuant to § 908.08(3)(c). As discussed above, a finding regarding N.L.G.'s comprehension should have been made at the time the trial court ruled that her video was admissible—*before* she took the stand at trial. *See id.* Had that been properly determined, there would have been no reason for the line of questioning that resulted in her statement that she did not remember her interview.

¶56    "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal*, 271 Wis. 2d 633, ¶44. As such, our interpretation of statutory language must be reasonable in order to "avoid absurd or unreasonable results." *See id.*, ¶46. We conclude that permitting the admission of N.L.G.'s video as a prior inconsistent statement pursuant to WIS. STAT. § 906.13(2)(a), when the requirements of WIS. STAT. § 908.08 had not been met, would be an unreasonable result: it would effectively render the requirements of § 908.08—the statute that regulates the admission of such videos, which includes a determination of their trustworthiness—superfluous.

¶57    Moreover, as Mercado points out, the trial court failed to comply with WIS. STAT. § 908.08(5)(a) when it allowed N.L.G. to testify prior to showing her video. That section states that if the trial court admits a video under this statute, the

party who offered the statement "may nonetheless call the child to testify *immediately after* the statement is shown to the trier of fact." Sec. 908.08(5)(a) (emphasis added). This court in ***James*** interpreted that provision to "unambiguously require[] the videotape to *precede* direct and cross-examination." ***Id.***, 285 Wis. 2d 783, ¶9 (emphasis added).[8] Thus, the trial court's decision to allow N.L.G. to testify prior to the showing of her video did not comply with the relevant law on this issue, and was therefore erroneous. *See **id.***, ¶8. Accordingly, the trial court's finding that N.L.G.'s video was also admissible as a prior inconsistent statement is also erroneous, because the statement of N.L.G. upon which that argument is based—that she did not remember the forensic interview—was only given as a result of the court erroneously allowing N.L.G. to be questioned prior to the showing of her video, pursuant to ***James***. *See **id.***, ¶9.

¶58 In sum, we acknowledge that the purpose of enacting WIS. STAT. § 908.08 "was to make it easier, not harder, to employ videotaped statements of children in criminal trials and related hearings." *See **Snider***, 266 Wis. 2d 830, ¶13 & n.6. However, we also recognize that the legislature included specific requirements in the statute, couched in terms that mandate the trial courts' compliance. *See* ***Karow v. Milwaukee Cty. Civil Serv. Comm'n***, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978) ("The general rule is that the word 'shall' is presumed mandatory when it appears in a statute."). As explained above, several of those mandatory requirements were not met here.

---

[8] We subsequently questioned in a later, unpublished per curiam decision whether we had "correctly interpreted the statute in ***James***" based on the language of the statute. *See **State v. Gatlin***, Nos. 2014AP2351-CR and 2014AP2352-CR, unpublished slip op. ¶90 (WI App May 12, 2016). Nevertheless, as we acknowledged in ***Gatlin***, we are bound by that interpretation. *See **id.***, ¶92.

¶59     Therefore, we reverse the convictions of Mercado on all three counts and remand this matter to the trial court for a new trial.[9]

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

[9] Given our decision, we do not reach Mercado's argument regarding the certification of the transcripts. *See **Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed.").

No.   2018AP2419-CR(D)


¶60   FITZPATRICK, J. (*dissenting*).  I respectfully dissent.

## I.  Introduction.

¶61   I do not join the Majority opinion for two main reasons.  First, Mercado argues that his convictions should be reversed because of purported errors of the trial court.  However, as to almost every alleged error of the trial court, Mercado never raised objections in the trial court consistent with the arguments he makes on appeal.  Our supreme court has held that it "is essential to the efficient and fair conduct of our adversary system of justice" for the arguments raised on appeal to have previously been made in the trial court.  ***State v. Huebner***, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727.  I discern no principled reason to not, in these circumstances, employ Wisconsin law on the forfeiture of arguments.  So, unlike the Majority opinion, I conclude that Mercado forfeited those arguments.[1]  Second, regarding the sole issue advanced on appeal by Mercado where he made an objection at trial concerning the admissibility of one of the victims' statements, I disagree with the Majority opinion and conclude that the statement of the victim was admissible.

¶62   I now summarize Wisconsin law regarding forfeiture of arguments.

---

[1]  As mentioned later in this dissent, Mercado is not without an avenue for relief.  He can file a motion in the trial court alleging that he received ineffective assistance of counsel at trial.  However, Mercado has not yet opted to pursue relief through that approach.

## II. Wisconsin's Forfeiture Rule.

¶63    "It is a fundamental principle of appellate review that issues must be preserved at the [trial] court." ***Id.***, ¶10; *see also **Vollmer v. Luety***, 156 Wis. 2d 1, 10, 456 N.W.2d 797 (1990) (stating that "'[o]ne of the rules of well nigh universal application established by courts in the administration of the law is that questions not raised and properly presented for review in the trial court will not be reviewed on appeal'" (citation omitted)).    This concept is known as the "forfeiture rule" because issues not preserved in the trial court are deemed forfeited.[2] ***Huebner***, 235 Wis. 2d 486, ¶11.    "The [forfeiture] rule is not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice." ***Id.*** (citing ***Freytag v. Commissioner of Internal Revenue***, 501 U.S. 868, 894-95 (Scalia, J., concurring) (citing 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2472 at 455 (1971))).    "The rule promotes both efficiency and fairness, and 'go[es] to the heart of the common law tradition and the adversary system.'" ***Id.*** (citing ***State v. Caban***, 210 Wis. 2d 597, 604-05, 563 N.W.2d 501 (1997)).

¶64    The forfeiture rule serves important objectives. ***Id.***, ¶12; ***Vollmer***, 156 Wis. 2d at 10-11.    First, "[r]aising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal," and thereby resulting in efficient judicial administration. ***Huebner***, 235 Wis. 2d 486, ¶12; ***Vollmer***, 156 Wis. 2d at 11.    Second, a timely and contemporaneous objection gives the parties and the trial court notice of the issue and a fair opportunity to address the objection through argument. ***Huebner***, 235

---

[2] The Wisconsin Supreme Court has recognized that the previously used phrase, "waiver rule" is "imprecise," and it is "better to label" this as the "forfeiture rule" because "it refers to the forfeiture of a right by silence rather than the intentional relinquishment of a known right." ***State v. Huebner***, 2000 WI 59, ¶11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727.

2

Wis. 2d 486, ¶12.  Third, the forfeiture rule "encourages attorneys to diligently prepare for and conduct trials." ***Id.***; *see* ***Vollmer***, 156 Wis. 2d at 11.  "In fact, some attorneys might be induced to build in an error to ensure access to the appellate court, notwithstanding their deficient performance at trial."  ***Vollmer***, 156 Wis. 2d at 11; *see also* ***Huebner***, 235 Wis. 2d 486, ¶12 ("[T]he rule prevents attorneys from 'sandbagging' errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal.").  Fourth, appellate courts should not "blindside trial courts with reversals based on theories which did not originate in their forum."  ***State v. Rogers***, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).

¶65  This appeal concerns questions about the admissibility of evidence, and the forfeiture rule is stated explicitly in the Wisconsin Rules of Evidence. WISCONSIN STAT. § 901.03(1) (2017-18)[3] states, in relevant part:

> Error may not be predicated upon a ruling which admits … evidence unless a substantial right of the party is affected; *and*

> (a) *Objection.*  In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection.

(Emphasis added in first paragraph.)  Consistent with that statute, this court has held that it is "incumbent upon defense counsel to police" testimony proffered by the State that may be objectionable.  *See* ***State v. Delgado***, 2002 WI App 38, ¶11, 250 Wis. 2d 689, 641 N.W.2d 490.  Specific and contemporaneous objections must be made to evidence in order to preserve error for appeal, and it is not the duty of the courts to "*sua sponte* strike testimony that is inadmissible."  ***Id.***, ¶12.

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶66 This court has applied the forfeiture rule in the context of WIS. STAT. § 908.08, a rule of evidence central to the issues raised by Mercado, and held:

> The notion that a trial court is required to continually monitor a defendant's trial strategy and witness examination places too great a burden on the trial court, and risks both unwanted interference in a defendant's case and an inference that the judge is representing the defendant.… "'This court has not looked with favor upon claims of prejudicial error based upon the trial court's failure to act when no action was requested by counsel.'"

*State v. Williquette*, 180 Wis. 2d 589, 603, 510 N.W.2d 708 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 677, 526 N.W.2d 144 (1995) (citations omitted).

¶67 With the forfeiture rule, and its objectives, in mind, Mercado's arguments raised on appeal are now considered.

### III. Transcripts of the Victims' Statements.

¶68 Mercado contends that his convictions should be reversed because the trial court admitted into evidence, and provided to the jury during trial, transcripts of the three victims' recorded statements which were transcribed by the State. Mercado argues that the trial court erred in two ways. First, the transcripts were not certified by a court reporter and, second, the three victims' recorded statements were not reported by the court reporter while those recorded statements were played for the jury during the trial. The trial court denied Mercado's postconviction motion on these grounds because: (a) Mercado did not make any objection, at or before the trial, to the preparation of the transcripts; and (b) Mercado did not establish that the transcripts provided to the jury were inaccurate in any way.

¶69 On appeal, Mercado renews those arguments. For its part, the Majority opinion recognizes, but does not resolve, these two issues. *See* Majority,

4

¶59 n.9. I believe the arguments made by Mercado should be resolved by affirming the trial court.[4]

¶70 The State contends that Mercado forfeited these arguments by not lodging any objections at or before trial regarding the transcripts or the reporting of the victims' recorded statements. The State asserts that Mercado's raising of these issues on appeal is the type of "sandbagging" the forfeiture rule is meant to avoid and that, if Mercado had made a timely objection, any alleged errors could have been avoided by the trial court. Mercado does not dispute that no objection to the preparation of the transcripts, or the failure of the court reporter to transcribe the recorded statements during trial, was made at or before the trial. Rather, Mercado makes only one argument that the forfeiture rule should not apply in this instance. He relies solely on his contention that, in *State v. Ruiz-Velez*, 2008 WI App 169, 314 Wis. 2d 724, 762 N.W.2d 449, no objection was made at trial to the introduction of the transcript of a victim's recorded statement, and this court considered the issue on appeal.

¶71 I reject Mercado's argument for three reasons. Mercado's argument regarding the *Ruiz-Velez* trial is undeveloped in that he cites in only a general sense to the *Ruiz-Velez* opinion for the point he attempts to make; that is, Mercado gives no citation to a paragraph number of that opinion to support his assertion that no contemporaneous objection was made at the *Ruiz-Velez* trial. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that we need not consider an argument unsupported by citation to legal authority). As well, *Ruiz-*

---

[4] For the reasons that follow, this court need not reach the questions of whether Wisconsin law requires that the transcripts of the victims' recorded statements be certified by a court reporter or whether the court reporter was required to transcribe the recorded statements while those were played for the jury at trial.

*Velez* cannot be read as granting a blanket exception to the forfeiture rule any time there is a question about the admission of a transcript of a victim's statement.

¶72     Next, Mercado makes no argument as to *why* the forfeiture rule should not be applied to these issues, and he makes no attempt to explain why no objections were made at or before trial. In other words, Mercado does not give this court any rebuttal to the State's arguments that Mercado's assertions are examples of sandbagging, and that objections by Mercado at or before trial could have alleviated any asserted errors. Without any reply from Mercado, I conclude that Mercado does not dispute the State's argument. *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that a proposition asserted by a respondent on appeal and not disputed by the appellant's reply may be taken as admitted).

¶73     Moreover, I agree with the State and the trial court that Mercado has not established that the transcripts provided to the jury were inaccurate, or that failing to have the court reporter transcribe the victims' recorded statements at trial prejudiced his defense in any way. Because Mercado has not shown that the admission in evidence of the transcripts, or the failure to have the reporter transcribe the recorded statements at trial, affected his "substantial right[s]," Mercado's arguments cannot be valid bases for an appeal. *See* WIS. STAT. § 901.03(1) ("Error may not be predicated upon a ruling which admits … evidence unless a substantial right of the party is affected.").

¶74     For these reasons, I conclude that Mercado's appeal of these issues should be rejected because Mercado has not made any developed arguments as to why the forfeiture rule should not be applied to these issues or how his substantial rights were prejudiced by the actions of the trial court. It is not up to this court to attempt to construct those arguments for Mercado. *See Industrial Risk Insurers v.*

*American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments [for the parties].").

## IV.  Trial Court's Review of the Audiovisual Recordings.

¶75    Next, the Majority opinion remands for a new trial regarding all three victims because the trial court did not view the audiovisual recordings in their entirety before trial.[5]  I disagree because Mercado forfeited his right to appeal this issue, and the trial court complied with the requirements of the applicable rule of evidence.

### A.  Mercado Forfeited This Argument.

¶76    WISCONSIN STAT. § 908.08(2)(b) is germane to this discussion and, for context, the pertinent portion of that statute is repeated:

> Before the trial … in which the [victim's] statement is offered and upon notice to all parties, the court … shall conduct a hearing on the statement's admissibility.  At or before the hearing, the court shall *view the statement*.

(Emphasis added.)  Mercado argues that the trial court erred because it did not review each "entire video" which contained the victims' statements.  In response, the State argues, and Mercado does not dispute, that Mercado's trial attorney made no objection to introduction into evidence of the three recordings based on the trial court's failure to review each entire recording.  Mercado completely ignores the State's forfeiture argument and does not even attempt to give this court a reason why, on appeal, this court should not apply the forfeiture rule.

---

[5] The Majority opinion follows the lead of the parties and the trial court and refers to "videos."  I sometimes use the terms "audiovisual recording" or "recording" interchangeably to be consistent with the terms of the statute. *See, e.g.*, WIS. STAT. § 908.08(1) and (3)(b).

¶77 In a footnote in which the State's forfeiture argument is recognized, the Majority opinion does not apply the forfeiture rule. Majority, ¶32 n.6.

¶78 I conclude that Mercado forfeited this argument. Mercado failed to object at trial to the trial court's actions. As noted, Mercado does not bother to give an excuse for that failure and refuses to respond to the State's forfeiture argument. In these circumstances in which Mercado did not object at trial, does not fashion an argument on appeal, and ignores a contrary argument from the State, I suggest that not applying the forfeiture rule puts this court in the position of an advocate for Mercado and abandons our necessary neutrality. *See **Industrial Risk Insurers***, 318 Wis. 2d 148, ¶25 ("[W]e will not abandon our neutrality to develop arguments [for the parties]."); **Schlieper**, 188 Wis. 2d at 322 (stating that a proposition asserted by a respondent on appeal and not disputed by the appellant's reply may be taken as admitted). In other words, we should not be making arguments Mercado does not himself advance.

¶79 Indeed, everything about these circumstances calls for invoking that rule. To allow Mercado not to object to the trial court's action and then prevail on this issue on appeal is, I suggest, the "sandbagging" our supreme court has counseled that this court should avoid. *See **Huebner***, 235 Wis. 2d 486, ¶12. Also, reversing the trial court on this issue is, in my opinion, "blindsiding" of the trial court which this court has recognized as a problem to avoid. **Rogers**, 196 Wis. 2d at 827.

## B. The Trial Court Complied With WIS. STAT. § 908.08(2)(b).

¶80 Moreover, even if Mercado had properly preserved this issue for appeal, his argument should be rejected because the trial court complied with WIS. STAT. § 908.08(2)(b).

¶81     I submit that the Majority opinion's error is that it accepts Mercado's argument that the trial court was required to view each "entire video" that contained the victims' statements. That argument conflates the terms "video" (or, as noted in the statute, "audiovisual recording" or "recording") with the term "statement." But, WIS. STAT. § 908.08(2)(b) uses only the term "statement" rather than "video" or "recording." *See* § 908.08(2)(b) ("At or before the hearing, *the court shall view the statement*." (emphasis added)). For the following reasons, I conclude that the terms "video" or "recording" are not synonymous with the term "statement" as used in the statute and are distinct as applied in this case.

¶82     Whether the terms "statement" and "recording" are synonymous is a matter of statutory interpretation. *See State v. Tarantino*, 157 Wis. 2d 199, 208, 458 N.W.2d 582 (Ct. App. 1990) (statutory interpretation in the context of WIS. STAT. § 908.08). In construing a statute, we are to interpret the statute in the context in which it is used and in relation to language surrounding closely related statutes. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. We have previously interpreted the term "statement" in the context of § 908.08 as meaning "the act or process of stating, reciting, or presenting orally." *Tarantino*, 157 Wis. 2d at 208-09 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1585 (1976)). The only reasonable reading of § 908.08(2)(b) is that the "statement" of each victim was their act of answering questions and stating information. In contrast, the "recording," as the term is used in § 908.08, is the medium for electronically capturing that statement and having it available to be seen and heard again. Therefore, the terms "statement" and "video" or "recording" are not synonymous as those terms are used in § 908.08.

¶83     The distinction is further borne out by a review of the three victims' statements in this case which have been recorded and are in the record. *See State v.*

*Jimmie R.R.*, 2000 WI App 5, ¶39, 232 Wis. 2d 138, 606 N.W.2d 196 (stating that, when the question concerns what can be seen and heard on a video, an appellate court is "in as good a position" as the trial court to make that determination). A review shows that approximately ten percent of each "recording" entered into evidence has no person in view, and there is no sound from anyone speaking during those same portions of the recordings. Those stretches are at the beginning and end of the recordings. The longest stretch with no one on camera and no one speaking is over three minutes and forty seconds at the beginning of the recording which contains L.A.G.'s statement. In other words, the "statement" of L.A.G. does not start until approximately three minutes and forty seconds into the "recording."

¶84 The above analysis of the statute, and the recordings made for this case, put the trial court's finding in the proper context. The trial court stated the following in its postconviction written decision regarding events which occurred before the start of the trial:

> While [Mercado] asserts that the court's remarks on November 8, 2016 that it would review the "first few minutes" of the videos indicate that [the circuit court] failed to view the statements as required by [WIS. STAT. §] 908.08(2)(b), *the court made [it] perfectly clear on November 9, 2016 that it had reviewed all relevant portions of the videos* necessary to make its ruling on their admissibility, including the end of the interview with NLG.[6]

(Emphasis added.) I see no reason why we should not take the trial court judge at his word that he "reviewed all relevant portions of the video." A trial court's factual

---

[6] The next sentence of the trial court's postconviction written decision states: "Further, the court viewed all three videos in their entirety when they were played for the jury at trial, and there was nothing in them which altered the court's view of their admissibility." I do not discern how this sentence in any way contradicts or qualifies the previous sentence of the trial court's decision which is quoted in the text, above.

findings are not clearly erroneous if the findings are supported by any credible evidence in the record, or any reasonable inferences from that evidence. *See Insurance Co. of N. Am. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998). To satisfy the requirement in the statute that "the court shall view the statement," the trial court did not need to view the entire video or recording as Mercado argues. Instead, the trial court was required only to view the "statement." The trial court's review of "relevant portions of the videos" is reasonably construed as the trial court having viewed the "statements" rather than every second on each video; that is, the trial court did not view the parts of the recordings that did not contain visual and audio of the statements of the victims.[7]

¶85 For those reasons, I conclude that the trial court complied with WIS. STAT. § 908.08(2)(b).

### V. Order of Presentation of Evidence.

¶86 Next, Mercado requests reversal of his conviction regarding N.L.G. because N.L.G. testified prior to the showing of her recorded statement to the jury. Mercado contends that this violated the provision of WIS. STAT. § 908.08(5)(a) which states in pertinent part:

> If the court … admits a recorded statement under this section, the party who has offered the statement into evidence may nonetheless call the child to testify immediately after the statement is shown to the trier of fact…. [I]f that party does not call the child, the court … upon request by any other party, shall order that the child be

---

[7] As well, the Majority opinion has placed a requirement on trial courts that the statute does not. Now, to comply with the Majority opinion, each trial court judge in this state who must "view the statement" under WIS. STAT. § 908.08(2)(b) must view every second of the recording, regardless of whether anyone is on the screen or whether there are any voices that can be heard.

produced immediately following the showing of the statement to the trier of fact for cross-examination.

I conclude that Mercado has forfeited his right to appeal this issue.

¶87     The State argues on appeal that Mercado forfeited this argument because he did not raise, at trial, any objection to the order of presentation of evidence regarding N.L.G. More particularly, the State asserts that, if raised by Mercado at trial, any potential error could have been avoided, and Mercado's argument on appeal is another example of "sandbagging" of the trial court.

¶88     Mercado does not dispute that he failed to make an objection at trial. In addition, Mercado recognizes the State's forfeiture argument, but he gives no reason as to why no objection was made or why the forfeiture rule should not be applied on appeal—with one exception. Mercado contends obliquely that the forfeiture rule should not be imposed in this case for this sole reason: "In [*State v. James*, 2005 WI App 188, 285 Wis. 2d 783, 703 N.W.2d 727], the defendant did not raise an objection to the procedure directed by the [c]ourt to have the victim testify first and then the video would be shown." Mercado's argument, to put it mildly, is disingenuous. This is so because it was James, the defendant in that case, who objected to the statutory procedure under WIS. STAT. § 908.08(5)(a) of first showing the recorded statements of the two child witnesses and then subsequently making the children available for live questioning before the jury. *James*, 285 Wis. 2d 783, ¶1. It was the State that appealed the trial court's order which granted James's request not to apply the statutory procedure. *Id.*, ¶8.[8] For those reasons,

---

[8] Mercado's brief in this court does not cite to any particular paragraph of *State v. James*, 2005 WI App 188, 285 Wis. 2d 783, 703 N.W.2d 727, but makes vague statements about the case without a required citation. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that we need not consider an argument unsupported by citation to legal authority).

the holding in *James* has no applicability to this issue. Accordingly, Mercado's sole argument regarding application of the forfeiture rule should be rejected.

¶89    I again see no reason not to apply the forfeiture rule to this issue. Mercado's trial counsel's actions are reasonably seen as "sandbagging" the trial court, and a failure to apply the forfeiture rule "blindside[s]" the trial court judge who received no objection to the procedure applied at trial. *See Huebner*, 235 Wis. 2d 486, ¶12; *Rogers*, 196 Wis. 2d at 827.

¶90    In addition, I disagree with the Majority opinion holding on this issue for the same reason I discuss below regarding the Majority's holding on whether N.L.G.'s statement is admissible as a prior inconsistent statement; that is, the Majority concludes that the only evidentiary avenue for admission of N.L.G.'s recorded statement is through WIS. STAT. § 908.08.

## VI. Prior Inconsistent Statement.

¶91    The Majority opinion concludes that the trial court did not comply with the requirements of WIS. STAT. § 908.08(3)(c) in determining whether the recorded statements of L.A.G. and N.L.G. were admissible.[9] The Majority opinion also concludes that N.L.G.'s statement was not admissible as a "prior inconsistent

---

[9] WISCONSIN STAT. § 908.08(3)(c) states in pertinent part:

> The court … shall admit the recording upon finding all of the following:
>
> ….
>
> (c) That the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth.

statement." For the following reasons, I would affirm the trial court because Mercado has made no argument in this court regarding the admissibility of L.A.G.'s statement under § 908.08(3)(c), and N.L.G.'s statement is admissible as a prior inconsistent statement.

### A. No Argument From Mercado About L.A.G.'s Statement.

¶92 In this court, Mercado has a separate section of his brief-in-chief, at pages 17-19, which takes up the question of whether the trial court made, or based on the record could have made, the necessary findings under WIS. STAT. § 908.08(3)(c). That section of Mercado's brief-in-chief mentions N.L.G., and only N.L.G., in regard to this issue. Mercado does not argue in this court that the trial court failed to comply with § 908.08(3)(c) regarding L.A.G.'s recorded statement.

¶93 In fact, the State calls out Mercado in its brief regarding Mercado's failure to make an argument about L.A.G. in this context:

> On appeal, Mercado challenges only the admissibility of [N.L.G.]'s video–not [O.E.G.]'s and [L.A.G.]'s videos–under [WIS. STAT. §] 908.08(3)(c)…. Mercado thus concedes that [O.E.G.]'s and [L.A.G.]'s videos satisfied [§] 908.08(3)(c) because he has not challenged the [trial] court's ruling to that effect. The State thus will address only [N.L.G.]'s video.

In reply, Mercado never disputes the State's contention and, again in a separate section of his reply brief regarding § 908.08(3)(c), does not mention L.A.G.'s statement.

¶94 For those reasons, I conclude that Mercado has conceded the State's assertion that Mercado has not raised any issue on appeal regarding L.A.G.'s statement and its admissibility *vis-à-vis* WIS. STAT. § 908.08(3)(c). *Schlieper*, 188

Wis. 2d at 322 (stating that a proposition asserted by a respondent on appeal and not disputed by the appellant's reply may be taken as admitted).

¶95    Nonetheless, the Majority opinion states: "Furthermore, from our review of the videos, we are unable to conclude that the finding required in [WIS. STAT. § 908.08(3)](c) could be made with regard to L.A.G. and N.L.G." Majority, ¶44. I disagree with that conclusion because Mercado does not make that argument on appeal regarding L.A.G., and this court should not put itself in the position of making an argument for Mercado that he does not make. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25 ("[W]e will not abandon our neutrality to develop arguments [for the parties].").

## B. Admissibility of N.L.G.'s Statement.

¶96    We have finally arrived at an issue Mercado both raised in the trial court and advances on appeal; that is, whether the recorded statement of N.L.G. was properly admitted into evidence by the trial court under WIS. STAT. § 908.08(3)(c) or another rule of evidence. The Majority opinion concludes that N.L.G.'s statement was inadmissible because the trial court failed to make the requisite findings under § 908.08(3)(c) and the statement was inadmissible under what is sometimes referred to as the "residual" hearsay exception, WIS. STAT. § 908.03(24). I do not believe we need to reach those questions because, unlike the Majority opinion, I agree with the trial court that N.L.G.'s statement was admissible as a prior inconsistent statement.

¶97    The first question within this issue is whether N.L.G.'s recorded statement was a prior inconsistent statement pursuant to WIS. STAT. § 908.01(4)(a),

which states in relevant part: "A statement[10] *is not hearsay* if: (a) … The declarant[11] testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: 1. Inconsistent with the declarant's testimony." (Emphasis added.) The State contends that N.L.G.'s testimony at trial was inconsistent with the recorded statement because, while testifying before the jury, N.L.G. denied talking to, or remembering talking to, the police officer who conducted the forensic interview of her. The question of "inconsistency" is a preliminary determination on admissibility made by the trial court under WIS. STAT. § 901.04(1). *See* DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE, § 801.402 at p. 782 (4th ed. 2017). Here, the trial court concluded that N.L.G.'s recorded statement was inconsistent with her trial testimony, and I agree. Mercado does not argue otherwise on appeal and has, therefore, conceded the point. *See Schlieper*, 188 Wis. 2d at 322.

¶98 The second question within this issue concerns WIS. STAT. § 906.13(2)(a) and its requirement that a prior inconsistent statement must satisfy one of the three factors noted in that statute to be admissible in evidence. The factor stated in § 906.13(2)(a)2. is whether "[t]he witness has not been excused from giving further testimony in the action." The record shows that N.L.G. was available for further testimony, including cross-examination concerning the statement, after the recorded statement was shown. *See* Majority, ¶18. Mercado makes no coherent

---

[10] WISCONSIN STAT. § 908.01(1) defines "statement" to include "an oral … assertion." No one questions that the recorded statement of N.L.G. meets that definition.

[11] WISCONSIN STAT. § 908.01(2) defines "declarant" as "a person who makes a statement." Of course, there is no dispute that N.L.G. is a declarant as defined in that portion of the statute.

argument otherwise and concedes the point.[12]  Therefore, in this specific situation, N.L.G.'s recorded statement satisfies § 906.13(2)(a).

¶99     The third question within this issue is whether N.L.G.'s recorded statement was admissible in evidence.  The Wisconsin Rules of Evidence confirm that N.L.G.'s prior inconsistent recorded statement was admissible.  There can be no question that N.L.G.'s recorded statement, which describes acts of Mercado that form a basis for the charges in the information, is "relevant" under the expansive language of WIS. STAT. § 904.01.[13]  In turn, WIS. STAT. § 904.02 states:  "*All relevant evidence is admissible*, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court."  (Emphasis added.)  So, absent an authority which excludes N.L.G.'s recorded statement, the statement was admissible in evidence.

¶100   The Majority opinion excludes N.L.G.'s recorded statement within the context of WIS. STAT. § 908.08.  As an example, the Majority opinion cites to § 908.08(7) which states in relevant part:  "At a trial … under sub. (1), a court … may also admit into evidence an audiovisual recording of an oral statement of a child that is hearsay and is admissible under this chapter as an exception to the hearsay rule."  So, to be admissible under subsection (7) of § 908.08, the statement must be:  (a) hearsay; and (b) admissible as an exception to the hearsay rule.  The Majority opinion states that, pursuant to WIS. STAT. § 908.01(4)(a)1., a prior

---

[12] In Mercado's reply brief, he states, "[N.L.G.], therefore, would not have been able to give further testimony upon cross-examination."  However, that statement is not tied in any discernable way to any reasoning.

[13] WISCONSIN STAT. § 904.01 states:  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

17

inconsistent statement is not hearsay and, therefore, a prior inconsistent statement cannot comply with the requirements of § 908.08(7). Majority, ¶54.

¶101 I agree with that conclusion as far as it goes. However, I part ways with my colleagues at this point in the analysis because they give no reason to exclude this prior inconsistent recorded statement of N.L.G. other than the fact that it does not fit within WIS. STAT. § 908.08. According to the Majority opinion, § 908.08, in effect, reaches out and excludes evidence which is otherwise admissible if that evidence does not come within the express terms of § 908.08. That premise, which I contend is an error, is the necessary basis for the Majority opinion's analysis in ¶¶52 through 57 of the Majority opinion.

¶102 The Majority opinion's reading of WIS. STAT. § 908.08 has the effect of keeping out of evidence a recorded statement of a victim, such as the one given by N.L.G., which, in these circumstances, is otherwise admissible in evidence. There is no case law, or reasonable reading of § 908.08, which leads to the conclusion that the provisions of § 908.08 are the bottleneck through which any recorded statement of a child must be admitted into evidence, if at all, in a criminal case.

¶103 To come to its conclusion, the Majority opinion necessarily adds words to WIS. STAT. § 908.08(1). As construed by the Majority, that portion of the statute now must be read as follows: "In any criminal trial … the court … may admit into evidence the audiovisual recording of an oral statement of a child who is available to testify, [only] as provided in this section." Courts should not add words to rules or statutes which have not been chosen by the legislature. *See Fond Du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App.

1989) (stating that "[o]ne of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning").

¶104 As recognized by the Majority opinion at Majority, ¶58, "[t]he legislature's purpose in enacting WIS. STAT. § 908.08 was to make it easier, not harder, to employ videotaped statements of children in criminal trials and related hearings." *State v. Snider*, 2003 WI App 172, ¶13, 266 Wis. 2d 830, 668 N.W.2d 784. In addition, we are to interpret statutes and rules in such a way as to harmonize statutes so that construction of those does not lead to absurd results. *James*, 285 Wis. 2d 783, ¶24. The conclusion of the Majority, I believe, leads to an absurd result in that an otherwise admissible prior inconsistent statement—which should now be easier to get into evidence—is now blocked from admissibility by the Majority opinion's incorrect reading of § 908.08.

## VII. Conclusion.

¶105 To be clear, Mercado is not without an avenue for relief. He may be able to obtain reversal of his convictions if his trial counsel was constitutionally ineffective. If Mercado files a motion with sufficient information, he will be granted an evidentiary hearing at which time the trial court will determine whether his trial counsel was ineffective for failing to make objections at trial as discussed above, and the trial court will determine whether any alleged ineffectiveness prejudiced Mercado. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, rather than making arguments for Mercado, or ignoring that objections were not made at trial by Mercado's attorney, I believe this court should let the standard ineffective assistance of counsel procedures play out as we do in other cases.

¶106 For those reasons, I respectfully dissent.