# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP2419-CR |

COMPLETE TITLE:  State of Wisconsin,
                        Plaintiff-Respondent-Petitioner,
                    v.
                 Angel Mercado,
                        Defendant-Appellant.

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 391 Wis. 2d 304,941 N.W.2d 835
PDC No:2020 WI App 14 - Published

| | |
|---|---|
| OPINION FILED: | January 20, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 26, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Conen |

JUSTICES:
ROGGENSACK, C.J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Scott E. Rosenow*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Scott E. Rosenow*.

For the defendant-appellant, there was a brief filed by *Esther Cohen Lee*, Milwaukee. There was an oral argument by *Esther Cohen Lee*.

An amicus curiae brief was filed on behalf of Wisconsin Association of Criminal Defense Lawyers by *Robert R. Henak, Ellen Henak*, and *Henak Law Office, S.C.*, Milwaukee.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP2419-CR
(L.C. No. 2016CF3679)

STATE OF WISCONSIN          :       IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

  **v.**

**Angel Mercado,**

      **Defendant-Appellant.**

**FILED**

**JAN 20, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

ROGGENSACK, C.J., delivered the majority opinion for a unanimous Court.

---

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. We review the court of appeals' decision[1] that reversed the circuit court's[2] conviction of Angel Mercado based on its determination that the video-recorded forensic interviews of Mercado's victims were inadmissible. On appeal, the State urges us to reverse the court of appeals arguing that the victims' video-recorded

---

[1] State v. Mercado, 2020 WI App 14, 391 Wis. 2d 304, 941 N.W.2d 835.

[2] The Honorable Jeffrey A. Conen of Milwaukee County presided.

forensic interviews were admissible under the normal procedures of Wis. Stat. §§ 908.08(1)-(6) (2017-18)[3] or under the residual hearsay exception found in Wis. Stat. § 908.03(24) by way of Wis. Stat. § 908.08(7).

¶2 We conclude that Mercado forfeited several of his objections to the admissibility of the forensic interviews. Specifically, Mercado forfeited his contentions that: (1) the circuit court erred by not watching the victims' forensic interviews in their entirety prior to admitting them and (2) the circuit court erred by permitting N.G. to testify prior to the jury watching her forensic interview. Additionally, although Mercado objected to the admissibility of N.G.'s video-recording under Wis. Stat. §§ 908.08(2) and (3), we conclude that her video-recording is admissible under § 908.08(7), based on the residual hearsay exception found in Wis. Stat. § 908.03(24). Therefore, we conclude that the circuit court did not erroneously exercise its discretion when it admitted the three video-recorded forensic interviews during Mercado's trial. Accordingly, the court of appeals' decision is hereby reversed in full and has no precedential value.

## I. BACKGROUND

### A. Factual Background

¶3 Mercado was arrested in August of 2016 for sexually assaulting N.G., L.G. and O.G., who were ages four through seven

---

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

at the time of the assaults. The victims and their mother, C.C., lived with Mercado during that time. C.C. had known Mercado since 2011 and she and her children moved in with him so that she could assist him with his day-to-day activities (e.g., banking, appointments, medication, etc.).

¶4 C.C. learned of the assaults on August 11, 2016, while she was driving with N.G., her youngest daughter. After hearing a song lyric that went "I want to lick you up and down," N.G. said from the backseat "[t]hat's what he does." C.C. asked N.G. who "he" was; N.G. told her "Viejo." Viejo is Spanish for "old man" and is a nickname the victims and others used for Mercado.

¶5 When C.C. and N.G. returned home, C.C. asked L.G. if anyone had been touching her. L.G. said yes. She too told her mother that Mercado was the person who touched her. Finally, C.C. waited for O.G., who at the time was out with Mercado, to return home. She asked O.G. "has [Mercado] been touching you?" O.G. said that "[y]es he does" and that the last time it happened was "[t]he day before yesterday."

¶6 C.C. asked N.G. and L.G. where Mercado had touched them. N.G. responded "down there" and pointed to "[h]er private area." L.G. said to C.C. that "he's been touching them in their private area and licking them." According to C.C., "private area" or "private part" are terms that the family uses to refer to the vagina area.

¶7 C.C. took all three girls to the hospital that night. The hospital staff did not find any physical evidence of the assaults; however, each victim individually repeated her

3

allegations to the hospital staff. For example, N.G., without being prompted, said "Viejo keeps licking me on my butt. I hate him." When asked why she was at the hospital, L.G. responded "To see if I'm ok. Vie[j]o has been touching me everywhere."

¶8 On August 16, 2016, C.C. took N.G., L.G. and O.G. to the Sojourner Family Peace Center in Milwaukee where they underwent forensic interviews with Officers Patricia Klauser and Danillo Cardenas. Before asking about what happened to them, the officers took the time to ascertain whether N.G., L.G. and O.G. understood the difference between right and wrong or the truth and a lie.

¶9 N.G. and L.G. initially had difficulty articulating that difference. For example, Officer Cardenas asked N.G. "what happens when somebody says something that's wrong and an adult finds out about it?" N.G. said she did not know. N.G. also said it would be both wrong and "not wrong" to call a pillow a wall. Conversely, when asked if she thought it was important to tell what is right, N.G. nodded affirmatively.

¶10 Likewise, L.G. initially told Officer Klauser it would be the truth if someone said that Officer Klauser's black pants were red. L.G. also said that she did not know if it was important to "tell what really happened." However, she said it would be "wrong" if someone said that Klauser's pants were red when they were black.

¶11 O.G. told Officer Klauser that kids who lie at school get "put . . . in time-out." She also stated that it would be a lie to say that Officer Klauser's black pants were red.

4

¶12 During N.G.'s forensic interview, she told Officer Cardenas that "[Viejo] . . . always . . . touch[ed] [them]" and that Mercado licked her and L.G. "on the butt." Officer Cardenas showed N.G. a body diagram and had her point to where Mercado touched her. She pointed to the buttocks on the diagram, and Officer Cardenas circled the spot of the diagram that corresponded with N.G.'s response.

¶13 Officer Klauser interviewed L.G. and O.G. Similar to N.G., L.G. told Officer Klauser that "[Viejo] touched [her] in [her] butt and [her] 'pee-pee', and on [her] two 'T-T's[']." She told Officer Klauser that "[Viejo] comes in [her] room . . . and then he walked [her] in the basement-then he pulled [her] pants down." Officer Klauser showed L.G. a similar body diagram and had L.G. put an 'X' wherever Mercado touched her. L.G. drew an 'X' on the chest, pubic area and buttocks of the diagram.

¶14 Finally, O.G. told Officer Klauser that Mercado "was touching [her] everywhere. And he did [it to] [her] two little sisters." Specifically, O.G. said that Mercado was "touching [her] in . . . the private part" and that Mercado's hands were "[u]nder [her] clothes." As with L.G., O.G. told Klauser that the assaults happened in the basement of their home. Officer Klauser also had O.G. put an 'X' on the diagram. She drew an 'X' on the pubic area of the body diagram.

¶15 The State filed a criminal complaint against Mercado based upon the information obtained during the victims' forensic

interviews. After learning of the criminal complaint against him, Mercado surrendered to law enforcement.

### B. Procedural Posture

¶16 The State charged Mercado with two counts of first degree sexual assault of a child, sexual intercourse with a child under 12 years old contrary to Wis. Stat. § 948.02(1)(b) and one count of first degree sexual assault of a child, sexual contact with a child under 16 years old contrary to Wis. Stat. § 948.02(1)(d).[4]

¶17 Before trial began, the State, pursuant to Wis. Stat. § 908.08(2)(a), informed Mercado and the circuit court of its intent to introduce the video-recordings of the victims' forensic interviews into evidence. In a pretrial hearing regarding the video-recordings' admissibility, Mercado objected to the introduction of N.G.'s and L.G.'s video-recordings. Specifically, Mercado alleged that N.G. "evinces in this interview . . . zero ability to be able to tell the examiner the difference between truth and a lie." Mercado raised the same objection regarding L.G. The State disagreed. It acknowledged that "[N.G.] does have some trouble with the examples that she's given." Nonetheless, the State argued that the video-recording showed that she understood the importance of telling the truth.

---

[4] While the jury was deliberating, the State moved to amend count one to first degree sexual assault of a child, sexual contact with a child under 13 years old contrary to Wis. Stat. § 948.02(1)(e).

Mercado did not object to the introduction of O.G.'s forensic interview.

¶18 The court agreed to watch "the first few minutes of each of the videos" to determine whether N.G. and L.G. understood the difference between the truth and a lie as required by Wis. Stat. § 908.08(3)(c). The State also cited a portion of N.G.'s video-recording wherein N.G. corrects one of Officer Cardenas's statements as "important context" for her understanding. The court agreed to watch that portion of the video-recording as well.

¶19 After reviewing the "relevant portions" of the video-recordings, the court determined that N.G. had "some acknowledgement of knowing what it means to tell the truth and what it means to not tell the truth." Similarly, the court determined that "there's far more in [L.G.'s] interview that goes toward the importance of telling the truth." Therefore, the court allowed the State to introduce both video-recordings. Mercado again raised an objection to N.G.'s video-recording at this juncture; he did not renew his objection to L.G.'s video-recording. The court overruled Mercado's objection.

¶20 Mercado's case continued to trial in January of 2017.[5] There, the State introduced the video-recordings of their

---

[5] The court declared a mistrial in Mercado's initial trial because the translators involved would not have been able to translate the forensic interviews in real time for Mercado. The court ordered the videos be transcribed before the case moved forward.

forensic interviews which were admitted into evidence.[6] The State also provided the jury with transcripts of the videos. Mercado did not object to either O.G.'s or L.G.'s video-recordings. After each video, the State called each victim to the stand to testify.

¶21 L.G. testified consistent with what she told her mother, what she told Nurse Susan Kanack at the hospital and with what she said during her forensic interview. Specifically she testified that "[Mercado] was pulling our pants down, pulling mine down, and then he was doing stuff to our private parts." She clarified that "stuff" meant licking. When asked why she put Xs on the drawing during her interview L.G. responded, "Because he was doing nasty stuff." She testified that "he" meant Viejo——Mercado.

¶22 O.G. had a more difficult time on direct examination; she said she was scared. However, she made it clear that she remembered Officer Klauser, made Xs on the drawing, and told Klauser the truth when they talked. On cross-examination O.G. reiterated that she was told to tell the truth and that she talked to Officer Klauser about Mercado.

¶23 Finally, and before the State showed N.G.'s video-recording, the court called N.G. to "get her to speak loudly enough and to respond to everyone's questions." Mercado did not object to the order of testimony, but moved to prevent N.G. from

---

[6] The State also introduced each victim's body diagram and their medical records without objection.

8

testifying "because she's not a competent witness because of the truth and lack-of-truth issue." The court overruled Mercado's motion stating that "[t]here's no such thing as competent witnesses anymore . . . it's up to the jury." Thereafter, Mercado agreed to "give it a try and see where it goes." The court stated that "[i]f there's some indicia of understanding of telling the truth, some, then I think that becomes an issue for credibility issues."

¶24 The court called N.G. to the stand and entered into the following colloquy with her:

> THE COURT: . . . do you know the difference between the truth and a lie?
>
> [N.G.]: No.
>
> THE COURT: Do you know what a lie is? A lie is when you say something that's not right. Do you understand that?
>
> [N.G.]: (Nods.)
>
> THE COURT: Okay, good. I'm going to ask you just a few questions, and you just help me out with what you know, okay? If I said that I was wearing a green robe, is that right or not?
>
> [N.G.]: No.
>
> THE COURT: It's not right? Why?
>
> [N.G.]: Because it's not.
>
> . . . .
>
> THE COURT: Is it green?
>
> [N.G.]: No, black.
>
> THE COURT: It's black?

9

[N.G.]: Yeah.

THE COURT: Okay. So that is a lie that this is green, right? Yes or no?

[N.G.]: No.

THE COURT: Is it true that this is green?

[N.G.]: No.

THE COURT: Okay, so then it must be a lie, right? Yes?

[N.G.]: Yes.

¶25 The State asked N.G. several similar questions to ascertain her ability to comprehend the difference between the truth and a lie. This attempt continued when the trial resumed the next morning. The court entered into a colloquy with N.G. that resembled the one it entered into the day before. This time, N.G. answered yes to the court's question "[y]ou have to tell us the truth, right?" She also said yes when asked if she promised to tell the truth. On direct examination, she said that she remembered talking to Officer Cardenas and that she had seen him before.

¶26 On cross-examination N.G. answered "no" to most of defense counsel's questions regarding whether she remembered Officer Cardenas or told him "serious stuff." Mercado argued that this obviated any meaningful opportunity for cross-examination. The court disagreed with Mercado noting its concern was that N.G. would not answer any questions on the stand at all. The court stated, "Meaningful opportunity for cross-examination means ask questions and whatever answers there

10

are, those are the answers that everyone's stuck with with that particular witness . . . ." The court told Mercado's trial counsel that she would have an opportunity for further cross-examination after the video was shown to the jury. The jury then heard testimony from Officer Cardenas and watched N.G.'s video-recording. Despite being afforded the opportunity, Mercado did not request any further examination of N.G. after the jury saw her video.

¶27 Mercado moved to dismiss the charge related to N.G. "based on the statements on the witness stand and the statements in the video." The court denied the motion finding that a prima facie case had been made and N.G.'s statements on the stand came down to credibility. The jury returned a guilty verdict on all counts.

¶28 Mercado subsequently moved to vacate his convictions. Mercado alleged the circuit court made several errors during trial. He alleged that the circuit court erred by (1) not watching the three forensic interviews in their entirety before admitting them into evidence; (2) conflating N.G.'s ability to testify as a credible witness with the truthfulness requirement of Wis. Stat. § 908.08(3)(c); (3) permitting N.G. to testify before her forensic interview was played for the jury; and (4) admitting the transcripts of the forensic interviews because they were not certified. The State argued that the court met the statutory requirements of Wis. Stat. §§ 908.08(2) and (3) and, even if it had not, all three videos were admissible under Wis. Stat. § 908.08(7) via the residual hearsay exception found

11

in Wis. Stat. § 908.03(24). The State further argued that N.G.'s video was admissible as a prior inconsistent statement and any error in admitting the transcript was harmless. The court agreed with the State and denied Mercado's motion for postconviction relief.

¶29 Mercado appealed to the court of appeals reprising his postconviction arguments. The court of appeals agreed with Mercado. It held that the circuit court contravened Wis. Stat. § 908.08(2)(b) by not watching the forensic interviews in their entirety before admitting them into evidence. State v. Mercado, 2020 WI App 14, ¶41, 391 Wis. 2d 304, 941 N.W.2d 835. It also held that N.G. and L.G. did not demonstrate the requisite understanding of truthfulness for the court to have satisfied § 908.08(3)(c). Id., ¶44. Further, it held that the circuit court erred in the order in which it received evidence under § 908.08(5)(a). Id., ¶57. It held that the circuit court, under State v. James, 2005 WI App 188, 285 Wis. 2d 783, 703 N.W.2d 727, was not permitted to allow N.G. to testify prior to playing her video-recording. Mercado, 391 Wis. 2d 304, ¶57. Finally, the court of appeals held that because the circuit court did not comply with §§ 908.08(2) and (3), the video-recordings were not admissible as residual hearsay and N.G.'s video-recording was not a prior inconsistent statement. Id., ¶49.

¶30 The State contended that Mercado forfeited his objections related to O.G. and L.G. because he did not timely object to the admission of either O.G.'s or L.G.'s video-

12

recording.[7] In a footnote, the court of appeals chose not to apply Wis. Stat. § 901.03(1)(a) forfeiture to Mercado's objections because it believed the rule to be one of judicial administration. Id., ¶32 n.6.

¶31 We granted the State's petition for review. On review, we determine: (1) whether Mercado forfeited all of his objections relating to O.G. and L.G. and one argument related to N.G. by not raising them at trial, in his postconviction motion or on appeal, and (2) whether N.G.'s video-recording is admissible under the residual hearsay exception. We also determine the proper interpretation of Wis. Stat. §§ 908.08(2) and (5).

## II.  DISCUSSION

### A.  Standard of Review

¶32 Whether a party properly preserved an objection for purposes of appeal is a question of law that we review independently. State v. Agnello, 226 Wis. 2d 164, ¶9, 593 N.W.2d 427 (1999). Questions of statutory interpretation are questions of law that we review independently. State v. Wiskerchen, 2019 WI 1, ¶16, 385 Wis. 2d 120, 921 N.W.2d 730.

---

[7] As it related to Mercado's contention that the circuit court did not make the requisite finding of L.G.'s understanding of the truth under Wis. Stat. § 908.08(3)(c), the State argued on appeal that, although Mercado preserved the issue by objecting in the pretrial hearing, he did not raise that issue on appeal and therefore conceded the circuit court's finding. The dissent agreed that Mercado conceded that point. See Mercado, 391 Wis. 2d 304, ¶94 (Fitzpatrick, J., dissenting).

¶33 Whether N.G.'s video-recording is admissible as residual hearsay requires us to apply Wis. Stat. § 908.03(24) to undisputed facts; that is a question of law that we review independently. See Warehouse II, LLC v. DOT, 2006 WI 62, ¶4, 291 Wis. 2d 80, 715 N.W.2d 213. Further, we "will not reverse a lower court decision where that court has exercised its discretion based on a mistaken view of the law if the facts and their application to the proper legal analysis support the lower court's conclusion." State v. Sorenson, 143 Wis. 2d 226, 250, 421 N.W.2d 77 (1988).

## B. Forfeiture

¶34 We first examine whether Mercado forfeited all of his objections as they relate to O.G. and L.G. and one objection as it relates to N.G. by not objecting at trial, raising an issue in his postconviction motion or raising an issue on appeal. If Mercado did forfeit his objections, the State argues that the court of appeals erred by directly reviewing and reversing the alleged errors to which Mercado did not object. We conclude that, under Wis. Stat. § 901.03(1), Mercado forfeited several of his objections by either not raising them during his trial or raising an issue on appeal. First, Mercado did not object to the court's showing of O.G.'s video-recording at any stage until he moved for postconviction relief. Additionally, although Mercado objected to the admissibility of L.G.'s video-recording during a pre-trial hearing, he did not renew his Wis. Stat. § 908.08(3)(c) argument relating to L.G. on appeal to the court of appeals. Finally, Mercado did not object to the court

14

permitting N.G.'s testimony prior to showing her video-recording.[8]

¶35 Forfeiture occurs when a party fails to raise an objection.[9] State v. Ndina, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. We have espoused important reasons why courts should abide by the forfeiture rule. Those rules include, for example, allowing circuit courts to correct errors in the first instance, providing circuit courts and parties with fair notice of an error and an opportunity to object, and preventing "attorneys from 'sandbagging' errors" by not raising them during trial and alleging reversible error upon review. State v. Huebner, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727.

¶36 In the context of admitting or denying admission of evidence, forfeiture is contemplated by statute. Wisconsin Stat. § 901.03(1) provides that, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record . . . ." Two things are required

---

[8] Mercado also failed to object to the admission of the non-certified transcripts of the victims' forensic interviews. However, the court of appeals did not reach a conclusion on that argument, Mercado, 391 Wis. 2d 304, ¶59 n.9, and Mercado did not renew that argument before us. Therefore, we do not address the transcripts.

[9] Forfeiture, the failure to assert a claimed right, is to be distinguished from "waiver," which occurs when a party affirmatively relinquishes a right. State v. Ndina, 2009 WI 21, ¶¶31-32, 315 Wis. 2d 653, 761 N.W.2d 612.

15

before an appellate court may reverse evidentiary errors: (1) the violation of a party's substantial right[10] and (2) an objection or motion to strike.

¶37 In this context, reviewing courts generally are limited to three exceptions to the forfeiture rule. First, Wis. Stat. § 901.03(4) permits reversal of unobjected-to errors when a reviewing court finds plain error.[11] Additionally, appellate courts may reverse unobjected-to errors in the interest of justice or due to ineffective assistance of counsel.[12] See Wis.

---

[10] When a circuit court erroneously admits evidence that affects a substantial right of a party and the party benefitted fails to show beyond a reasonable doubt that the admitted evidence did not contribute to the verdict, reversible error may occur. State v. Monahan, 2018 WI 80, ¶33, 383 Wis. 2d 100, 913 N.W.2d 894.

[11] Plain errors are those that are "so fundamental that a new trial or other relief must be granted." Virgil v. State, 84 Wis. 2d 166, 191, 267 N.W.2d 852 (1978) (citation omitted). "[T]he plain-error doctrine should be reserved for cases where there is the likelihood that the erroneous introduction of evidence has denied a defendant a basic constitutional right." State v. Sonnenberg, 117 Wis. 2d 159, 178, 344 N.W.2d 95 (1984).

[12] Although provisions relating to forfeiture are codified in Wis. Stat. § 901.03, forfeiture, as a doctrine of judicial administration, is grounded in common law. See Village of Trempealeau v. Mikrut, 2004 WI 79, ¶¶15-16, 273 Wis. 2d 76, 681 N.W.2d 190. It is common law that permits appellate review of unobjected-to errors in certain circumstances. See, e.g., State v. Counihan, 2020 WI 12, ¶¶28, 32, 390 Wis. 2d 172, 938 N.W.2d 530 (permitting review of an unobjected-to error due to ineffective assistance of counsel). The legislature must explicitly abrogate common-law exceptions in the text of the statute if it intends to change the common law. Waukesha Cnty. v. Johnson, 107 Wis. 2d 155, 162, 320 N.W.2d 1 (1982) ("The canons of construction provide that a statute does not abrogate or change any principle or rule of common law unless it is so clearly expressed as to leave no doubt of the legislature's

Stat. § 752.35 (discretionary reversal when it appears that the full controversy has not been fully tried or there is a miscarriage of justice); State v. Avery, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 ("The supreme court and the court of appeals may set aside a conviction through the use of our discretionary reversal powers"); see also State v. Erickson, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999) (declining to reach a forfeited issue but rather "analyz[ing] the [forfeiture] within the ineffective assistance of counsel framework").

¶38 Upon a review of the record, we cannot identify a single instance during the trial in which Mercado objected to O.G.'s video-recording; he therefore forfeited his objection in regard to its admissibility. In addition, although he objected to L.G.'s video-recording during a pretrial hearing, he did not renew his objection in his postconviction motion or during appellate proceedings.[13] Finally, even when Mercado objected to

---

intent." (footnote omitted)).

[13] Mercado is correct that he properly preserved his challenge to L.G.'s video-recording for purposes of appeal by objecting during his pre-trial hearing. See State v. Bustamante, 201 Wis. 2d 562, 571, 549 N.W.2d 746 (Ct. App. 1996) (holding that a defendant need not renew at trial an objection that the defendant lodged against a motion in limine in order to properly preserve it for appeal). However, he did not raise that issue in his postconviction motion or before the court of appeals. The State argues that because Mercado did not dispute the State's forfeiture argument on appeal, Mercado conceded the argument. In his dissenting opinion, Judge Fitzpatrick agreed. We agree as well. When a party does not respond to an argument, we may deem that argument conceded. Waukesha Cnty. v. S.L.L., 2019 WI 66, ¶42, 387 Wis. 2d 333, 929 N.W.2d 140.

the admission of N.G.'s video-recording under Wis. Stat. §§ 908.08(2) and (3), he did not contend it was error for N.G. to testify before her video until he moved for postconviction relief. Once again, he failed to bring this evidentiary matter to the circuit court's attention in a timely manner, thereby forfeiting his objection. We are uncertain why the court of appeals chose to ignore the multiple forfeitures in this case. To the extent that there are defenses related to the admissibility of O.G.'s and L.G.'s video-recordings, we conclude Mercado forfeited those arguments and there was therefore no error in the circuit court admitting either video-recording.

¶39 However, having reached the above conclusion, we must nevertheless address Wis. Stat. § 908.08 because the court of appeals chose to ignore forfeiture and to directly review and reverse based on the alleged errors. In so doing, the court of appeals misinterpreted subsections of § 908.08.

### C. Wisconsin Stat. §§ 908.08(2) and (5)

¶40 As an out-of-court statement, a child's statement during a forensic interview is hearsay if it is offered at trial for the truth of the matter asserted. See Wis. Stat. § 908.01(3). However, "an out-of-court statement, even though hearsay, may be admissible if it fits within a recognized exception to the hearsay rule." Virgil v. State, 84 Wis. 2d 166, 185, 267 N.W.2d 852 (1978).

¶41 Video-recordings of a child's statements are admissible if the child is available to testify and the child's statements fall into one of the provisions of Wis. Stat.

18

§ 908.08.  The statutory exception serves the important purpose of "'minimiz[ing] the mental and emotional strain of [children's] participation [at trial].'"  State v. Snider, 2003 WI App 172, ¶13 n.6, 266 Wis. 2d 830, 668 N.W.2d 784 (quoting 1985 Wis. Act 262, § 1).  In addition, the legislature enacted § 908.08 to "make it easier, not harder, to employ videotaped statements of children in criminal trials and [other] related hearings."  Id., ¶13.  It is with this background in mind that we discuss § 908.08's requirements.

### 1.  Viewing Wis. Stat. § 908.08 Video-Recordings

¶42 When a party introduces a child's statement in a video-recording, the offering party and the court must comply with the procedures set forth in Wis. Stat. §§ 908.08(2)(a) and (b).  First, the party intending to introduce a child's recorded statement "shall file . . . an offer of proof" that shows certain information relating to the video and provide that offer of proof to other parties.  § 908.08(2)(a).  Next, the court "shall conduct a hearing on the statement's admissibility [and] [a]t or before the hearing, the court shall view the statement." § 908.08(2)(b).  Finally, at the hearing, "the court . . . shall rule on objections to the statement's admissibility." § 908.08(2)(b).

¶43 Determining how much of a child's video-recording that a circuit court is required to review under Wis. Stat. § 908.08(2)(b) requires us to interpret § 908.08(2)(b).[14]

---

[14] We agree with the State that "statements" would not include portions of videos such as a black screen with no audio,

19

Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the plain language is clear, we stop the inquiry. Id., ¶45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. When statutory language is ambiguous, we go beyond the plain language. Id., ¶47. The court of appeals determined that the plain language of § 908.08(2)(b) requires a circuit court to review a child victim's recording in its entirety before admitting it into evidence. We disagree.

¶44 Wisconsin Stat. § 908.08(2)(b) requires a circuit court to conduct a hearing on the "statement's admissibility." In Wis. Stat. ch. 908, the word "statement" is defined using general terms. A statement is "(a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by the person as an assertion." Wis. Stat. § 908.01(1). This general definition does not help us in interpreting the question presented, which is whether the circuit court is obligated to review everything that is said on a recording or some lesser amount. Instead, to answer that question, we look beyond the general definition of "statement" and look to the context in

static, or video of an empty room, but that is not where the contest is here.

20

which the term "view the statement" is used to determine the scope of Wis. Stat. § 908.08(2)(b).

¶45 The context in which a statutory term appears is important to its meaning. Kalal, 271 Wis. 2d 633, ¶46. The term, "statement," appears preceding Wis. Stat. § 908.08(3), which sets criteria for admitting the recording of what a child has said. Those statutory criteria require the circuit court to make specific findings about the child, the verity of the recording and the lack of surprise to the opposing party. Therefore, we interpret the extent of what a circuit court must view in § 908.08(2)(b) in light of the obligations that § 908.08(3) places on the circuit court. Stated otherwise, the scope of the court's review under § 908.08(2)(b) is driven by the obligations the court must satisfy in § 908.08(3).

¶46 Recordings of children's testimonies will differ depending on the facts of the case and the attributes of the child. Therefore, the circuit court will need to exercise its discretion in determining how much of each recording it must review under Wis. Stat. § 908.08(2)(b) in order to be able to make the findings required by § 908.08(3). Here, the circuit court fulfilled its § 908.08(2) obligations because it viewed the amount of the video-recordings necessary to make § 908.08(3) findings, and therefore, we conclude that the court appropriately exercised its discretion in deciding not to review the entire recording.

¶47 Accordingly, we decline to adopt the court of appeals' bright-line rule that a circuit court must view a Wis. Stat.

21

§ 908.08 video-recording in its entirety in every case. Rather, the decision on how much of a § 908.08 video-recording a circuit court is to review is limited to those portions necessary to make the requisite findings under Wis. Stat. § 908.08(3); this is a discretionary decision made on a case-by-case basis. See, e.g., State v. Huntington, 216 Wis. 2d 671, ¶18, 575 N.W.2d 268 (1998) (noting that the excited utterance hearsay exception is fact-dependent and declining to create a bright-line rule for that exception).

### 2. Child Witnesses Testimony

¶48 We also determine the appropriate interpretation of Wis. Stat. § 908.08(5) as it relates to the order in which circuit courts receive testimony. Here, the court of appeals held that the circuit court erred by permitting N.G. to testify before the jury saw her video. Again, we disagree. The purpose of § 908.08(5)(a) is to direct what happens immediately after a child's recorded forensic interview is shown, not what happens before that showing.

¶49 Wisconsin Stat. § 908.08(5)(a) states:

> If the court or hearing examiner admits a recorded statement under this section, the party who has offered the statement into evidence may nonetheless call the child to testify immediately after the statement is shown to the trier of fact. Except as provided in par. (b), if that party does not call the child, the court or hearing examiner, upon request by any other party, shall order that the child be produced immediately following the showing of the statement to the trier of fact for cross-examination.

22

Whether this statute precludes a circuit court from permitting a child to testify prior to the showing of the child's video-recording is a matter of statutory interpretation.

¶50 We conclude that the plain language of Wis. Stat. § 908.08(5)(a) relates to what occurs immediately after a child's recorded statement is shown. It does not affect what happens before the video-recording is presented because § 908.08(5)(a) says nothing about events preceding the finder of fact viewing such a video-recording. It permits the offering party to "call the child to testify immediately after the statement is shown to the trier of fact." Upon the request of another party, § 908.08(5)(a) requires that "the court or hearing examiner . . . shall order that the child be produced immediately following the showing of the statement . . . for cross-examination." Notably absent from either of those sentences is any reference to what testimony should or should not occur prior to showing the video-recording. As such, we decline to accept the court of appeals' proffered limitation. See County of Dane v. LIRC, 2009 WI 9, ¶33, 315 Wis. 2d 293, 759 N.W.2d 571 ("We will not read into the statute a limitation the plain language does not evidence."). As § 908.08(5)(a) does not control what occurs prior to the finder of fact viewing a video-recording of a child's statement, we conclude that permitting N.G. to testify beforehand fell under the circuit court's general authority to reasonably control the "mode and order of . . . presenting evidence" under Wis. Stat. § 906.11.

23

¶51 Here, the court of appeals said that it found support for its conclusion in its opinion in State v. James. See Mercado, 391 Wis. 2d 304, ¶57. We are unpersuaded. In James, the court of appeals was not asked whether a child may testify before his or her video-recording is shown. Rather, the court was tasked with determining whether the circuit court erroneously exercised its discretion when it refused to show a child's video-recording before the child testified based on the circuit court's concern that if the child subsequently refused to say anything on the stand a Crawford violation would occur thereby requiring the court to declare a mistrial.[15] James, 285 Wis. 2d 783, ¶4. The court of appeals reversed the circuit court and held that the statutory procedure of having a child witness available to testify at trial after the video-recording is shown was a nondiscretionary obligation. Id., ¶12. The court of appeals held that the statutory procedure satisfies the Confrontation Clause as long as the child testifies. Id., ¶11.

¶52 We agree with this interpretation of Wis. Stat. § 908.08(5)(a). However, it does not follow that a child is not permitted to testify before his or her video-recording simply because a child witness is not required to do so. We agree with the court of appeals statement in James that § 908.08(5)(a) "does not impermissibly interfere with the functioning of the judiciary and constitutes an appropriate exercise of shared

_____

[15] Crawford v. Washington, 541 U.S. 36 (2004).

24

judicial and legislative power," and therefore, the circuit court was required to follow § 908.08(5)(a). Id., ¶¶20, 25.

¶53 To the extent that James has been interpreted as concluding that Wis. Stat. § 908.08(5)(a) precludes circuit courts from also calling a child witness before a video-recording is shown, that interpretation is erroneous. James did not so hold. Section 908.08(5)(a) is limited to the procedure a circuit court must follow after a child's recorded statement is shown to the trier of fact.

### D.  The Residual Hearsay Exception

¶54 Finally, we address the admissibility of N.G.'s video-recording under the residual hearsay exception, Wis. Stat. § 908.03(24). We begin by addressing whether N.G.'s video-recording is admissible under Wis. Stat. § 908.08(7).

¶55 Wisconsin Stat. § 908.08(7) permits circuit courts to admit a child's recorded statement "that is hearsay and is admissible under this chapter as an exception to the hearsay rule." When a party introduces a child's video-recording under § 908.08(7), the video-recording's admissibility is not limited by the requirements of §§ 908.08(2) and (3). Snider, 266 Wis. 2d 830, ¶12. Here, the applicable hearsay exception is the residual hearsay exception found in Wis. Stat. § 908.03(24). The residual hearsay exception permits the admission of "[a] statement not specifically covered by any of the foregoing [hearsay] exceptions but having comparable circumstantial guarantees of trustworthiness." § 908.03(24).

25

¶56 We have set out five factors that courts look to in determining whether a video-recording of a child's statement meets circumstantial guarantees of trustworthiness:

> First, the attributes of the child making the statement should be examined, including age, ability to communicate verbally, to comprehend the statements or questions of others, to know the difference between truth and falsehood, and any fear of punishment, retribution or other personal interest, such as close familial relationship with the defendant, expressed by the child which might affect the child's method of articulation or motivation to tell the truth.

> Second, the court should examine the person to whom the statement was made, focusing on the person's relationship to the child, whether that relationship might have an impact upon the statement's trustworthiness, and any motivation of the recipient of the statement to fabricate or distort its contents.

> Third, the court should review the circumstances under which the statement was made, including relation to the time of the alleged assault, the availability of a person in whom the child might confide, and other contextual factors which might enhance or detract from the statement's trustworthiness.

> Fourth, the content of the statement itself should be examined, particularly noting any sign of deceit or falsity and whether the statement reveals a knowledge of matters not ordinarily attributable to a child of similar age.

> Finally, other corroborating evidence, such as physical evidence of assault, statements made to others, and opportunity or motive of the defendant, should be examined for consistency with the assertions made in the statement.

Sorenson, 143 Wis. 2d at 245-46. Courts are to consider the facts of each particular case and "no single factor [should] be dispositive of a statement's trustworthiness." Id. at 246.

26

¶57 Upon consideration of the Sorenson factors in this case, we conclude that N.G.'s statement has circumstantial guarantees of trustworthiness such that it is admissible under the residual hearsay exception.

¶58 First, N.G. was four years old at the time of the assaults. As we stated in Sorenson, "a child at such a young age is unlikely to review an incident of sexual assault and calculate the effect of a statement about it." Id. N.G.'s age "tend[s] to support the veracity of [her] report of sexual abuse" by Mercado. Id. Additionally, she had a close relationship with Mercado having lived with him and spent time with him outside of the house. See Huntington, 216 Wis. 2d 671, ¶25 ("[T]he defendant and Jeri maintained essentially a father-daughter relationship since she was three years old."); see also Snider, 266 Wis. 2d 830, ¶18 (noting that the victim "thought of Snider as an uncle"). Finally, despite N.G.'s difficulty explicitly stating that she understood the difference between the truth and a lie, "[c]onfusion and unresponsiveness under these circumstances may be accorded less weight . . . unless deliberate falsity is otherwise shown." Sorenson, 143 Wis. 2d at 247. So, although she had trouble articulating the difference between the truth and a lie, there is simply no evidence that N.G. deliberately fabricated her statement. The first Sorenson factor weighs in favor of admitting the video-recording.

¶59 Second, N.G. made her statement to a police officer. Similar to the social worker in Sorenson to whom the victim made

27

her statement, Officer Cardenas had experience conducting these types of forensic interviews and did not appear to utilize coercive interviewing techniques.[16] Id. at 247-48 (noting that the social worker "had experience with counseling and child sexual abuse cases" and that we perceived no evidence of a motive to coerce the victim to inculpate her father). He interviewed her in his official capacity as a police officer. See Huntington, 216 Wis. 2d 671, ¶28. We detect no motive to coerce N.G. to implicate Mercado nor any motive to have her fabricate her assertions. Officer Cardenas's relationship with N.G. weighs in favor of admitting N.G.'s video-recording.

¶60 Third, the circumstances under which N.G. made her statement support its reliability. Again, N.G. made her statement during a one-on-one interview with a police officer at a neutral location. Additionally, although difficult to pinpoint, the timing of the statement in relation to the assaults is at least a neutral factor. The assaults occurred between June and August of 2016. This puts her statement in a range of potentially a few days to one or two months after the assaults.[17] As we noted in Sorenson, "Contemporaneity and

---

[16] Officer Cardenas testified that he has been working for the sensitive crimes division of the Milwaukee Police Department for "approximately five years" and has conducted "close to 200" forensic interviews with children ages 4-12.

[17] O.G. told her mother that the last assault happened "the day before yesterday." This was in August. N.G.'s medical record indicates that the last assault occurred on August 9, 2016. However, it does not appear from the record that N.G. explicitly indicated a date range wherein the assaults occurred, and the State acknowledged that "it seems unclear when exactly

28

spontaneity of statements are not as crucial in admitting hearsay statement[s] of young sexual assault victims under the residual exception."   Sorenson, 143 Wis. 2d at 249; see also Huntington, 216 Wis. 2d 671, ¶30 (noting that a two-week period between the assault and the statement did not detract from its trustworthiness).   Accordingly, we conclude that the potential several week delay in reporting does not undercut the truthfulness of N.G.'s statement.

¶61 Fourth, the content of N.G.'s statement further supports its trustworthiness.   As we stated in Sorenson, "A young child is unlikely to fabricate a graphic account of sexual activity because it is beyond the realm of his or her experience."   Sorenson, 143 Wis. 2d at 249.   N.G. told Officer Cardenas that Mercado "licked [her] on [her] butt."   She also demonstrated knowledge appropriate for her age, saying for example that her butt is used "to pee" and using the term "butt" for both her buttocks and genitals.   Based on the manner in which she described the assaults, the content of her statement appears to be free from adult manipulation.   See Snider, 266 Wis. 2d 830, ¶18.

¶62 Fifth, there is circumstantial evidence that corroborates N.G.'s statement to Officer Cardenas.   We note at the outset that there was not physical evidence of the assaults, which is to be expected given the nature of the assaults.

---

the assaults began in relation to when the disclosures happened."

29

Huntington, 216 Wis. 2d 671, ¶32. Rather, we conclude there is corroborating evidence in the consistency of N.G.'s statements. Specifically, N.G. offered nearly identical statements to her mother and to Nurse Kanack. In both circumstances she was unprompted and offered these statements voluntarily. As noted in the facts of this case, she told her mother about the assault after hearing a song lyric. Nurse Kanack testified that N.G. "blurted . . . out spontaneously" that "Viejo keeps licking me on my butt; I hate him." Additionally, O.G. and L.G. acknowledged that Mercado assaulted all three of them. We conclude that these surrounding statements are sufficient to corroborate N.G.'s statement to Officer Cardenas.

¶63 In assessing all five Sorenson factors, we conclude that there are sufficient circumstantial guarantees of trustworthiness to permit N.G.'s statement to be admitted under the residual hearsay exception.[18]

¶64 The court of appeals concluded otherwise. It determined that factors one and four were fatally missing. Mercado, 391 Wis. 2d 304, ¶49. The court of appeals held the first factor was not met because N.G. did not demonstrate that she understood the difference between the truth and a lie. Id.

_____

[18] Because we conclude that N.G.'s video-recording is admissible under the residual hearsay exception, we need not settle whether the circuit court correctly found that N.G. understood the importance of telling the truth. See Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed."). For the same reason, we do not address whether N.G.'s video was admissible as a prior inconsistent statement.

The court of appeals also held that by not watching the video-recordings in their entireties, the circuit court could not have made a determination that the statements were free from indications of falsity contrary to the requirements of the fourth factor. Id.

¶65 The court of appeals rationale is flawed for at least two reasons. First, the court of appeals combined the requirements of Wis. Stat. §§ 908.08(2), (3) and (7). Specifically, it held that N.G. did not demonstrate the requisite level of truthfulness "as required by the first factor." Id. This conflates the first Sorenson factor with the child's understanding of the importance of telling the truth, found in § 908.08(3)(c). As outlined above, veracity of reporting is to be considered under the first factor; however, circuit courts are to examine other attributes of the child as well. Next, the court of appeals held that "by not reviewing the videos in their entirety prior to admitting them, the trial court did not fully comply with the fourth . . . factor relating to the content of the statement and whether there are indications that the information is false." Id. Once again, this conclusion injects a requirement that is unnecessary in a § 908.08(7) analysis.

¶66 As the court of appeals previously explained in Snider:

> [T]he plain language of Wis. Stat. § 908.08(7) permits the admission of a child's videotaped statement under any applicable hearsay exception regardless of whether the requirements of subsections (2) and (3) have been

31

met. Section 908.08(1) permits the admission of a "videotaped oral statement of a child who is available to testify, <u>as provided in this section</u>." The remaining subsections of the statute provide two ways for the statement to be admitted "as provided in this section." The first is by meeting the various requirements set forth in subsections (2) and (3). If these requirements are met, the court "shall admit the videotape statement," § 908.08(3), and it need not consider any other grounds for admitting a statement. Alternatively, a court "may <u>also</u> admit into evidence a videotape oral statement of a child that is hearsay and is admissible under this chapter as an exception [to] the hearsay rule." Section 908.08(7). This language can only be read to mean that, if a child's videotape statement is admissible under one of the hearsay exceptions set forth in Wis. Stat. § 908.03, the requirements listed in the preceding subsections of § 908.08 are inapplicable.

<u>Snider</u>, 266 Wis. 2d 830, ¶12 (emphasis in original). We agree with <u>Snider</u>'s conclusion. Section 908.08 provides two methods by which a party may introduce a child's video-recording. By requiring a video-recording to satisfy subsections (2) and (3) despite the plain language of subsection (7), the court of appeals read one of the two modes of admission out of the statute. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." <u>Kalal</u>, 271 Wis. 2d 633, ¶46. The court of appeals' interpretation violates this principle.

¶67 The second flaw in the court of appeals' discussion is that, assuming <u>arguendo</u> that factors one and four were not met here, the court of appeals did not weigh the missing factors against the ones it appeared to conclude were present. Its opinion merely makes the conclusory statement that factors one and four were not met and the circuit court therefore erred in

32

admitting the video-recording as residual hearsay.  Mercado, 391 Wis. 2d 304, ¶49.  As we explained in Sorenson, no single factor is dispositive.  The court of appeals should have considered all five factors and made its decision based on the comparative weights it gave to all of the Sorenson factors.  Even if some portions of some of the factors were missing, there was other evidence that overwhelmingly supports admitting the video-recording.[19]

¶68  For all of the above reasons, we conclude that N.G.'s video-recording was admissible as residual hearsay and the court of appeals' statutory interpretation and analysis were incorrect.

IV.   CONCLUSION

¶69 We conclude that Mercado forfeited several of his objections to the admissibility of the forensic interviews.  Specifically, Mercado forfeited his contentions that: (1) the circuit court erred by not watching the victims' forensic interviews in their entirety prior to admitting them, and (2) the circuit court erred by permitting N.G. to testify prior to the jury watching her forensic interview.  Additionally, although Mercado objected to the admissibility of N.G.'s video-

---

[19] As with Sorenson, N.G.'s statement was admitted under a different hearsay exception.  However, we "will not reverse a lower court decision where that court has exercised its discretion based on a mistaken view of the law if the facts and their application to the proper legal analysis support the lower court's conclusion."  State v. Sorenson, 143 Wis. 2d 226, 250, 421 N.W.2d 77 (1988).

recording under Wis. Stat. §§ 908.08(2) and (3), we conclude that her video-recording is admissible under § 908.08(7) based on the residual hearsay exception found in Wis. Stat. § 908.03(24). Therefore, we conclude that the circuit court did not erroneously exercise its discretion when it admitted the three video-recorded forensic interviews during Mercado's trial. Accordingly, the court of appeals' decision is hereby reversed in full and has no precedential value.

*By the Court.*—The decision of the court of appeals is reversed.