COURT OF APPEALS
DECISION
DATED AND FILED

March 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2001-FT**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023JV6

**IN COURT OF APPEALS
DISTRICT II**

IN THE INTEREST OF A.A.A., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

 PETITIONER-RESPONDENT,

 V.

A.A.A.,

 RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Fond du Lac County: ANTHONY C. NEHLS, Judge. *Affirmed.*

¶1     LAZAR, J.[1] Amanda,[2] a juvenile, appeals the circuit court's dispositional order that placed her in the Serious Juvenile Offender (SJO) program at Copper Lake School, a Type I juvenile correctional facility for girls. *See* WIS. STAT. § 938.02(10p), (19).[3] She asserts that, before a juvenile may be so placed, the SJO placement statute requires a finding that the only other appropriate placement is a "[s]ecured residential care center for children and youth" and that, because no such centers exist in Wisconsin, she cannot be placed at Copper Lake School. *See* § 938.02(15g). This court disagrees and affirms.

## BACKGROUND

¶2     Amanda was charged as a juvenile on February 17, 2023 with two counts of First-Degree Child Sexual Assault—Sexual Intercourse with a Child Under Age 13, pursuant to WIS. STAT. § 948.02(1)(e). She was temporarily placed in nonsecure custody in her mother's home on March 15, 2023. A few weeks later, Amanda was under a new investigation and ultimately charged with Third-

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] In order to protect her confidentiality, this court refers to the juvenile by a pseudonym. *See* WIS. STAT. RULE 809.19(1)(g).

[3] A "[j]uvenile correctional facility" is defined as "a correctional institution operated or contracted for by the department of corrections or operated by the department of health services for holding in secure custody persons adjudged delinquent [including] the Mendota juvenile treatment center under [WIS. STAT. §] 46.057 and a facility authorized under … [WIS. STAT. §] 938.538(4)(b) …." WIS. STAT. § 938.02(10p). The Department of Corrections describes a "Type 1 juvenile correctional facility" as one that "is operated by the State of Wisconsin and uses physical security mechanisms such as fences and locked doors in addition to control and surveillance by staff members to restrict the liberty of a youth committed to the facility by the court." STATE OF WISCONSIN DEPARTMENT OF CORRECTIONS, TYPE 1 AND TYPE 2 JUVENILE CORRECTIONAL FACILITIES (Nov. 19, 2012), https://doc.wi.gov/PublishingImages/Pages/AboutD OC/JuvenileCorrections/DivisionOfJuvenileCorrections/Type1Type2JuvenileCorrectionalFaciliti es.pdf.

Degree Child Sexual Assault for assault on another juvenile at her mother's home. She was placed into secure detention on April 13, 2023.

¶3    After a hearing on April 21, 2023, Amanda was ordered to be placed in nonsecure custody with her grandmother. That placement did not occur because the grandmother immediately declined to provide placement. The court commissioner recalled the case and vacated its prior order, leaving Amanda in secure detention.

¶4    On July 26, 2023, Amanda pleaded no contest to one count of First-Degree Child Sexual Assault—Sexual Intercourse with Child Under Age 13; the other first-degree count was dismissed and read in.[4] At her plea hearing, the State recommended placement in the SJO program. Amanda filed a motion asserting that SJO placement at Copper Lake School would be "illegal." She argued that the current version of WIS. STAT. § 938.34(4h) (the SJO placement statute) had a necessary condition precedent: the circuit court had to determine that the only other appropriate placement was a placement under § 938.34(4m)— namely, a "secured residential care center for children and youth."[5] Because the State of Wisconsin has yet to build any SRC centers, Amanda asserted SJO placement was not permitted. She also contended that shorter-term placement at Copper Lake School (under WIS. STAT. § 938.34(4m)) as an "ordinary corrections placement" was similarly statutorily barred.

---

[4] The Third-Degree Child Sexual Assault charge was resolved with placement of Amanda in her grandmother's home, but was superseded by the SJO order in this case. The third-degree charge and placement order are not at issue in this appeal.

[5] For ease of reference, these facilities shall be referred to as "SRC centers."

3

¶5    After a hearing, the circuit court[6] denied Amanda's motion and held that SJO placement was statutorily available.  The court explained that

> the legislature did not pass a law repealing the SJO program, did not pass a law repealing the possibility of placement in corrections, Copper Lake [School] has not been closed, it still has some juveniles placed there, it's still being funded.  The Juvenile Justice Code still contemplates corrections and SJO program placements.

At disposition, the court ordered Amanda into the SJO program at Copper Lake School for a five-year period commencing September 13, 2023.  Amanda appeals, arguing that her dispositional order should be vacated because she could not be placed directly at Copper Lake School pursuant to the juvenile code, even through the SJO program.[7]

## STANDARD OF REVIEW

¶6    "Questions of statutory interpretation are questions of law that we review independently."  *State v. Mercado*, 2021 WI 2, ¶32, 395 Wis. 2d 296, 953 N.W.2d 337; *State v. Gramza*, 2020 WI App 81, ¶15, 395 Wis. 2d 215, 952 N.W.2d 836.  Even when conducting de novo review, however, appellate courts

---

[6] The Honorable Andrew J. Christenson issued the oral ruling on Amanda's motion and then orally ordered her placed in the SJO program at Copper Lake School.  The Honorable Anthony C. Nehls signed the written dispositional order.

[7] Amanda also argues that "ordinary correctional placements" under WIS. STAT. § 938.34(4m) must be in SRC centers.  She asks this court to "review the interpretation of [§] 938.34(4m)" despite the fact that "[o]f course [Amanda] was put in an SJO order, not an ordinary corrections order."  This court declines her invitation and notes that it is not at all clear from the Record, as she asserts, that the circuit court incorrectly "made general findings that a[n] ordinary corrections order"—presumably Amanda means one placing her at Copper Lake School—"was permitted."  The court simply determined that "any of those options are available" in overruling Amanda's objection "to change of placement," in which she argued that "Copper Lake School is not a permitted placement" but did not mention the SJO program.

may "benefit from the analys[i]s of the circuit court." ***Waity v. LeMahieu***, 2022 WI 6, ¶18, 400 Wis. 2d 356, 969 N.W.2d 263 (quoting ***Estate of Miller v. Storey***, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759).

**DISCUSSION**

¶7　　This court agrees with the circuit court that placement in the SJO program at Copper Lake School was statutorily available for Amanda.

**I.　　The statutes**

¶8　　Appellate courts have a "solemn obligation ... to faithfully give effect to the laws enacted by the legislature." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. In interpreting statutes, this court first looks to their language "because we assume that the legislature's intent is expressed in the words it used." ***Orion Flight Servs., Inc. v. Basler Flight Serv.***, 2006 WI 51, ¶16, 290 Wis. 2d 421, 714 N.W.2d 130 (quoting ***State v. Reed***, 2005 WI 53, ¶13, 280 Wis. 2d 68, 695 N.W.2d 315).

¶9　　WISCONSIN STAT. § 938.34 is titled "Disposition of juvenile adjudged delinquent" and provides the possible dispositions available to a circuit court, "one or more" of which must be ordered "[i]f the court adjudges a juvenile delinquent." Subsection (4h) relates to the SJO program:

> **(4h)** SERIOUS JUVENILE OFFENDER PROGRAM. Place the juvenile in the serious juvenile offender program under [WIS. STAT. §] 938.538, but only if all of the following apply:
>
> 　(a) The juvenile is 14 years of age or over and has been adjudicated delinquent for committing or conspiring to commit a violation of [WIS. STAT. §] ... 948.02(1) ....

(b) The court finds that the only other disposition that is appropriate for the juvenile is placement in a juvenile correctional facility under sub. (4m).

¶10     Amanda does not contest the circuit court's findings that she meets the requirements of WIS. STAT. § 938.34(4h)(a): she was at least fourteen years old and her offense was one of those enumerated in the paragraph. Her argument is premised on what she characterizes as the impossibility of a finding pursuant to paragraph (b) that "the only other disposition that is appropriate … is placement in a juvenile correctional facility under sub. (4m)." That subsection, which governs "CORRECTIONAL PLACEMENT"—or, as Amanda calls it, "ordinary corrections placement"—provides:

> **(4m)** CORRECTIONAL PLACEMENT. Place the juvenile under the supervision of the county department in a secured residential care center for children and youth identified by the county department if all of the following apply:
>
> (a) The juvenile has been found to be delinquent for the commission of an act that would be punishable by a sentence of 6 months or more if committed by an adult.
>
> (b) The juvenile has been found to be a danger to the public and to be in need of restrictive custodial treatment. If the court determines that any of the following conditions applies, but that placement in the serious juvenile offender program under sub. (4h) is not appropriate, that determination shall be prima facie evidence that the juvenile is a danger to the public and in need of restrictive custodial treatment under this subsection:
>
> > 1. The juvenile has committed a delinquent act that would be a felony under [WIS. STAT. §] ... 948.02(1) or (2) ... if committed by an adult.

Sec. 938.34(4m)(a)-(b)1.

¶11     This language is the result of the legislature's passage of 2017 Wis. Act 185 (the "Act"). Prior to passage of the Act, the introduction to subsection (4m) read as follows:

> **(4m)** CORRECTIONAL PLACEMENT. Place the juvenile *in a juvenile correctional facility* or a secured residential care center for children and youth *under the supervision of the department of corrections* if all of the following apply:

WIS. STAT. § 938.34(4m) (2015-16) (emphases added).  While the removal of the words "juvenile correctional facility" appears to require initial placement at an SRC center for juveniles placed pursuant to the subsection (4m) dispositional option, Section 66 of the Act created a procedure by which a juvenile's placement may be changed pursuant to WIS. STAT. § 938.357(3)(b):

> Notwithstanding [§] 938.34(4m) and subject to par. (c), the court may order placement in a Type 1 juvenile correctional facility under supervision of the department of corrections for a juvenile who was adjudicated delinquent under s. 938.34(4m) if the court finds, after a hearing under this section, that [the county does not have space for the juvenile in a SRC center or that other statutorily prescribed conditions apply.]

As the circuit court observed, the Act did not change the SJO provisions in § 938.34(4h).  Nor did it amend WIS. STAT. § 938.538, which governs administration of the SJO program.

## II.  Amanda's interpretation is untenable based on the statutory text and structure and would frustrate legislative intent.

¶12   "Generally, language is given its common, ordinary, and accepted meaning." ***Orion Flight Servs.***, 290 Wis. 2d 421, ¶16.  "[S]tatutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely-related statutes, and interpreted to avoid absurd or unreasonable results." ***Id.***  Courts may also consider a statute's "scope, context, and purpose" so long as they "are ascertainable from the text and structure of the statute itself." ***Kalal***, 271 Wis. 2d 633, ¶48.  This is because the statute has to be read as a whole; context and syntax cannot be disregarded.  Finally, "[s]tatutory

7

language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.*, ¶46; *see also* **Belding v. Demoulin**, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373 ("Statutory provisions dealing with the same matter should be read in harmony such that each has force and effect."); ANTONIN SCALIA AND BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 174 (2012) ("[A statute] should [not] needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").

¶13 Amanda's assertion that until an SRC center has been created in Wisconsin, the current statutory scheme bars *any* initial placement in a juvenile correctional facility, even for juveniles found to be serious offenders, is belied by the text and the structure of the relevant statutes. Separate subsections (4h) and (4m) of WIS. STAT. § 938.34 provide separate dispositional options for a circuit court. Subsection (4h) is the one relevant for juveniles placed in the SJO program, and it was not repealed or amended by the Act. By its plain language, paragraph (b) of that subsection requires a finding that—*if* the court does not enter a dispositional order under that subsection, the only "other" (i.e., alternative) appropriate disposition is mandatory secured confinement under subsection (4m) in an SRC center.

¶14 The circuit court made that finding in Amanda's case; after discussing the seriousness of her violations, it noted that she was "a danger to the public" and that a "[c]onfined setting is the only appropriate [place] where treatment can be effective." *See* WIS. STAT. § 938.34(4m)(b) (requiring findings that juvenile is "a danger to the public and … in need of restrictive custodial treatment"). Once Amanda was ordered into the SJO program, her physical placement options were controlled by WIS. STAT. § 938.538—which, again, was neither repealed nor amended by the Act. The lack of actual SRC centers

available to Amanda has nothing to do with the ability of the court to select the subsection (4h) disposition option in her case.

¶15 Amanda's interpretation of the statute would not just impermissibly render some of the language in WIS. STAT. § 938.34(4h) surplusage that would never have any practical effect, *see Kalal*, 271 Wis. 2d 633, ¶46, it would completely void that subsection and remove the SJO program as one of the initial dispositional options available to circuit courts "[i]f the court adjudges a juvenile delinquent." *See* § 938.34. It would also lead to the absurd result that placement would depend on the bare existence of facilities regardless of any effect on a juvenile. *See Orion Flight Servs.*, 290 Wis. 2d 421, ¶16 (statutes should be construed, where possible, to avoid absurd results). Amanda's position is not that she must be placed in an SRC center but, absurdly, that her placement at Copper Lake School would be permissible if there were just one bed in one SRC center in existence—regardless of the fact that she would have no claim to it.[8]

¶16 Indeed, adoption of Amanda's position would necessitate noncustodial placement in all cases, even for the most serious juvenile offenders. This would run roughshod over the stated purposes of the SJO program (left intact by the Act) which include providing "[s]upervision, care and rehabilitation that is more restrictive than ordinary supervision in the community" for serious juvenile offenders. *See* WIS. STAT. § 938.538(2)(a); *see also State v. Wachsmuth*, 73

---

[8] Pursuant to WIS. STAT. § 938.357(3)(b)—created in the same Act that amended subsection (4m)—a juvenile who is placed in an SRC center under subsection (4m) may instead be placed in a Type 1 juvenile correctional facility if there is no space in an existing SRC center or if an existing SRC center is unable to meet the juvenile's needs. According to Amanda, the same juvenile would have to be placed in noncustodial care if the state had yet to build an SRC center. This also strikes this court as absurd.

Wis. 2d 318, 330, 243 N.W.2d 410 (1976) (noting that statutes should not be read to "require a narrow technical meaning be given words in question in such blatant disregard of their context as to frustrate the obvious intent of the legislature"). Amanda's position would actually contradict several of the legislature's purposes underlying the Juvenile Justice Code in general, most significantly "[t]o protect citizens from juvenile crime." WIS. STAT. § 938.01(2)(a).[9]

## CONCLUSION

¶17 Amanda's appeal is premised upon the fallacy that the Act barred all direct placements in juvenile correctional facilities. There is no language in the Act that makes such a sweeping declaration. No reasonable interpretation of WIS. STAT. § 938.34(4h) can result in the conclusion that SJO Type 1 juvenile correctional facilities are per se unlawful placements. Accordingly, this court affirms the order placing Amanda at Copper Lake School.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[9] The Juvenile Justice Code was created to address juvenile delinquency, protect citizen's rights, impose accountability on juveniles for law violations, and to equip juvenile offenders with the necessary tools to live responsibly and be productive members of society. *See* WIS. STAT. § 938.01(2). In whole, the Code is the means by which to "respond to a juvenile offender's needs for care and treatment, consistent with the prevention of delinquency, each juvenile's best interest and the protection of the public," by enabling circuit courts to assess these purposes and to utilize the most effective dispositional option. Sec. 938.01(2)(f).